FRADY v. IVESTER

(125 S. E., ·134)

1. APPEAL AND ERROR—DETERMINATION AS TO CORRECTNESS OF CONCLU-
SIONS OF LAW HELD NOT BINDING AS TO THE FACTS ON SUBSEQUENT
APPEAL.—Supreme Court's determination that certain conclusions
of law upon the facts· found were erroneous, and that new trial
should be had, *held* not binding as to the facts upon subsequent
appeal.

2. APPEAL AND ERROR—OPINION ON FORMER APPEAL CONTROLLING ONLY
SO FAR AS APPLICABLE TO NEW QUESTIONS AND DIFFERENT STATE OF
FACTS.—Where, on second appeal from trial *de novo,* new questions
arise, or the record presents a different state of facts, the prin-
ciples of law announced on the first appeal are controlling in so far
as they are fairly applicable to the new questions and to the differ-
ent state of facts then presented.

3. MORTGAGES—MORTGAGEE'S POSSESSION HELD ADVERSE AND NOT PER-
MISSIVE.—Where mortgagors executed conditional deed, providing
that conveyance should become absolute on failure to pay, and
mortgagee on mortgagor's default claimed the land, denied that
mortgagors had any right or title, and ordered them to vacate, her
possession was adverse and not permissive.

4. MORTGAGES—MORTGAGEE IN POSSESSION CAN PERFECT LEGAL TITLE BY
ADVERSE POSSESSION.—Legal relationship does not prevent mortgagee
in possession from holding adversely to mortgagor's legal title, nor
preclude him from perfecting legal title in himself by adverse pos-
session, in view of Civ. Code, 1922, § 5223.

5. ADVERSE POSSESSION—EXTENT OF CLAIM FOUNDED ON WRITTEN IN-
STRUMENT DOES NOT DEPEND ON VALIDITY THEREOF.—Extent of oc-
cupant's claim founded on written instrument, under Code Civ.
Proc., 1922, § 321, does not depend on validity of instrument.

6. MORTGAGES—INSTRUMENT REPUDIATED AS MORTGAGE, AND CLAIMED TO
CONSTITUTE CONVEYANCE, MAY BE LOOKED TO AS DEFINING· EXTENT
OF POSSESSION.—Where possession is taken under written instrument
which occupant repudiates as a mortgage, and claims to· be a con-
veyance, and where adverse possession is proved by evidence other
than the instrument, the writing may be looked to, to define extent
of claimant's possession, under Code Civ. Proc., 1922, § 321.

7. LIMITATION OF ACTIONS—DEATH OF PERSON AGAINST WHOM STATUTE
   HAD BEEN RUNNING DID NOT TOLL STATUTE, THOUGH TITLE PASSED
   TO PERSON UNDER DISABILITY.—Death of person against whom Code
   Civ. Proc. §§ 317, 321, fixing period of limitation for commencement
   of action to recover land, had been running for almost eight years,
   did not toll statute, though title passed to person under disability.

8. LIMITATION OF ACTIONS—SUSPENSION OF STATUTE AS TO ONE TENANT
   IN COMMON, BECAUSE OF DISABILITY, INURED TO BENEFIT OF COTEN-
   ANT.—Suspension of Code Civ. Proc. §§ 317, 321, fixing period of
   limitations for actions to recover land, because of disability of one
   tenant in common, under Section 327, inured to benefit of cotenant.

Before WILSON, J., Oconee, March, 1923.    Reversed.

Action by A. J. Frady and others against Mrs. W. C.
Ivester. Judgment for plaintiffs for the possession of two
tracts of land and for $1,100.00 as rents, and defendant
appeals.

*Mr. E. L. Herndon,* for appellant, cites: *Adverse pos-
session:* 114 S. C., 306; 81 S. C., 347; 77 S. C., 139.
*Statute commenced to run from time mortgagee in posses-
sion gave notice to mortgagors that she claimed property:*
3 Rich. Eq., 445; Bail. Eq., 195; 4 Rich. Eq., 63; 4 Strob.,
196; 7 Rich. Eq., 34; 1 Strob. Eq., 79; 2 Strob., 340; 3
Strob. Eq., 39; 2 Hill, Eq., 228; 2 Rich. Eq., 446; 26
S. C., 237; 32 S. C., 253; 82 S. C., 497. *Plaintiff's claim
barred by the presumption of a grant:* 20 S. C., 52; 53
S. C., 126; 59 S. C., 451; 94 S. C.; 79; 113 S. C., 81; 118
S. C., 206. *Mortgagee in possession entitled to retain pos-
session against mortgagor until proof that debt has been
paid:* 78 S. C., 182; 2 Jones Mort. 7th Ed. Sec., 715, 716;
673, 674; 3 Pom. Eq. Jur. Pr., 1190; 19 R. C. L., 330; 62
S. C., 300; 18 S. C., 123; 41 S. C., 337. *If this is action to
redeem, is barred by lapse of ten years since right accrued:*
Code Proc. Sec. 337; 118 S. C., 214. *Right of foreclosure
and right to redeem barred:* 92 S. C., 513; 11 A. & E.
Enc. L. 248; 27 Cyc., 1816. *Plaintiffs barred by laches:*
64 S. C., 502; 2 Rich. Eq., 447; 4 Rich. Eq., 64; 28 A. &

E. Enc. L., 1135. *Court can grant relief from unconscionable verdicts:* 115 S. C., 768.

*Mr. J. R. Earle,* for respondent, cites: *No question of limitation applicable in this case:* 114 S. C., 306. *Defendant in possession liable for reasonable rents and profits:* McMul., 16.

October 14, 1924. Rehearing refused November 14, 1924.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Action for the recovery of two tracts of land; one containing 100 acres, and the other 50 acres. Broadly, the case made is this:

The common source of title is Elizabeth E. Tate. The plaintiffs claim the 100-acre tract as the heirs-at-law of one Amanda Frady, deceased, who at the death of Elizabeth E. Tate is alleged to have taken the whole of the 100 acres as an heir-at-law of said Elizabeth E. Tate, deceased. Two of the plaintiffs claim the 50-acre tract by virtue of a deed of conveyance from Elizabeth E. Tate.

The defendant in possession bases her claim to title upon the following facts:

In 1897 Elizabeth E. Tate had legal title to and was in possession of the 100-acre tract. Prior thereto, in July, 1896, she had conveyed to her two granddaughters, "M. V. Hughes and E. D. Frady," the 50-acre tract. On February 26, 1897, these three parties, "E. E. Tate, M. V. Hughes, and E. D. Frady," executed and delivered to the defendant a warranty deed of conveyance, covering both of the tracts of land, which contained the following condition:

"It is understood by and between the parties hereto that this deed of conveyance shall be considered and regarded as a mortgage on said real estate until the 1st day of November, 1897, but if the said Elizabeth E. Tate, Mary V. Hughes,

and E. D. Frady shall fail to pay to the said Miss W. C. Von Lehe two mortgages which she now holds against the said real estate, then this deed of conveyance shall become absolute in fee forever, to the said Miss W. C. Von Lehe."

One of the grantors who executed the foregoing deed, viz., T. D.Frady (now Delilah E. Marlin), was at the time of the execution and delivery thereof a minor, 17 or 18 years of age. The makers of this instrument, then in possession of the lands, failed to pay the extraneous mortgages therein referred to by November 1, 1897. Early in November, 1897, the defendant entered into possession of the land, and continued in undisturbed possession of the premises until March 7, 1919, when this action was commenced.

The case was first tried before a Referee, whose findings and conclusions in favor of the defendant were confirmed by the Circuit Judge. On appeal to this Court (118 S. C., 195; 110 S. E., 135) it was held that the instrument of February 26, 1897, under which the defendant went into possession, was a mortgage; that by virtue of the relationship of the parties thereby created certain conclusions of law of the lower Court upon the facts found were erroneous; and that a new trial should be had. Upon remand for a new trial the cause was tried the second time before the presiding Judge of the Court of Common Pleas and a jury. From judgment on verdict in favor of the plaintiffs for the recovery of both tracts of land, and for "the sum of $1,100 as rents," the defendant now appeals.

Before proceeding to a consideration of the questions 1, 2 raised, it is necessary to determine the extent to which the disposition of this appeal is controlled by the decision on the former appeal. Since the result of that appeal was the award of a new trial in a law case, it is clear that there was no such judicial determination of the facts as would bind the Court upon a subsequent appeal. Where on a second appeal from a trial *de novo* new questions arise, or the record presents a different state of facts, it is equally

clear that the principles of law announced on the first appeal
are controlling only in so far as they are fairly applicable
to the new questions, and to the different state of facts pre-
sented by the record on the second appeal. 4 C. J. 1101;
2 R. C. L., 224, § 187. *Jennings v. Parr*, 54 S. C., 109; 32
S. E., 73. *Murray v. Aiken Min., etc., Co.*, 39 S. C., 457;
18 S. E., 5. *State v. Tucker*, 56 S. C., 561; 35 S. E., 215.

Analysis of the decision on the first appeal will disclose
that the result reached was predicated upon the view that,
in the state of facts presented by that record, the defend-
ant's possession of the lands in dispute did not constitute
such adverse holding as would start the running of the
Statute of Limitations, or of the 20-year period required to
presume a grant. Having held that the instrument of writ-
ing under which the defendant took possession was a mort-
gage, and proceeding upon the theory that a mortgagee in
possession, even by express verbal agreement of the mort-
gagor that he shall take the land for the debt, is a trustee
for the mortgagor, and as such cannot claim the benefit of
adverse possession until he shall have thrown off the trust
by relinquishing possession or giving notice to the mort-
gagor of his adverse holding, the Court announced the fol-
lowing conclusion:

"The only consideration stated in the findings of fact
by the Circuit Court is that, the mortgagors 'being unable
to make payments, the land was surrendered to the defend-
ant in payment of the mortgage debts.' * * * The de-
fendant's entry into possession was permissive, and, as she
had a duty to perform she could not hold adversely to the
rights of the mortgagors until she either surrendered the
possession or gave notice of an adverse possession. *Wilson
v. Weathersby*, 1 N. & McC., 374. *McCutchen v. Mc-
Cutchen*, 77 S. C., 129; 57 S. E., 678; 12 L. R. A. (N. S.)
1140. *Pinckney v. Knowles*, 112 S. C., 7; 99 S. E., 354.
*Milhouse v. Partrick*, 6 Rich., 350."

Unless, therefore, the state of facts presented by this record is so essentially identical with that considered on the first appeal as to justify the application of the same principles of law, and to require the same conclusion upon the mixed question of law and fact as to the character of the defendant's holding of the lands in her possession, it is clear that the decision of this appeal is not ruled by the conclusions announced and the result reached on the former appeal. The case, as an action to recover real estate, turns upon whether the defendant's tenure of the lands here in question was adverse or permissive. Careful review of the evidential facts here presented leaves no room for doubt that as to this pivotal question a conclusion different from that reached on the former appeal is imperatively required.

As indicated above, the Court's view on the first appeal that defendant's holding was permissive and not adverse was expressly predicated upon the fact, or assumption of fact, that the defendant entered by and with the consent of the mortgagors under an express verbal agreement that "the land was surrendered to the defendant in payment of the mortgage debts." In this case the evidence is open to no other reasonable inference than that the defendant, not only did not enter into possession with the consent or by permission of the mortgagors then in possession, but that she entered against the will of the mortgagors, to whom she extended express notice, prior to her taking possession, that they would have to get off the land, and that she claimed it in her own right under the conditional deed of February 26, 1897. The defendant testified that before taking possession of the land she told the mortgagors that if they could not pay "they would have to give it up and move off"; that she "made them give it up and made them move off"; that she entered into possession about November 1, 1897; that since then she had returned the land and paid taxes on it as her own; that she had rented the land to others, used it as her own, and kept no accounts, because the land

was hers; and, in substance, that she had been in open, notorious, continuous possession of the lands, under claim of title, exclusive of any other right, since she took possession in November, 1897. That evidence of defendant was not only not controverted by any testimony offered by the plaintiffs, but was expressly corroborated by them. The plaintiff Mary V. Hughes, one of the makers of the instrument under which defendant claimed, testified:

"I know she [the defendant] took possession of the land and told us to get out and get another place. She claimed the land."

Mrs. D. E. Marlin, one of the plaintiffs, who as "E. D. Frady" signed the conditional deed or mortgage, under which defendant claimed, testified, in substance, that she had never consented to the defendant taking possession; that at the time defendant "claimed possession" she was living on the place; that defendant told her mother "and them" that she would not "take the money," that they had "come too late," that she (defendant) claimed the place, and that she (the defendant) notified those in possession "to move off." The testimony of A. J. Frady, a plaintiff who was the husband of Amanda Frady and the son-in-law of Mrs. Elizabeth E. Tate; of E. H. Miller, the husband of one of the plaintiffs; of Ben Rutledge and J. W. Cox, witnesses for the plaintiffs—was of the same purport and to the same effect. If the foregoing undisputed facts do not conclusively rebut any inference, arising merely from the relation of mortgagor and mortgagee, that the defendant entered permissively and do not establish "notice of an adverse possession" from the very inception of defendant's holding, it would be difficult to conceive of facts, short of a taking and holding *vi et armis,* which would rebut such inference and establish such notice.

The legal relationship of mortgagor and mortgagee, as is clearly recognized in the opinion on the first appeal, does not prevent a mortgagee in possession

from holding adversely to the mortgagor's legal title, nor preclude him from perfecting legal title in himself by adverse possession.   At common law, and prior to the enactment of the Statute of 1791, now Section 5223, Vol. 3, Code, 1922, upon defeasance of a mortgage, the legal title passed to the mortgagee.   In the case of *Drayton v. Marshall,* Rice, Eq., 373; 33 Am. Dec., 84, where the mortgage was executed prior to the Act of 1791, and the mortgagor's relation to the legal title after defeasance was identical with that of the mortgagee before foreclosure and sale under the statute now in force, the Court of Errors, through Chancellor Harper, said:

"I have no doubt but that, if there were no more than this, that after forfeiture the mortgagor in possession continued to pay interest   *   *   *   or should otherwise acknowledge the debt, this would be a recognition of the mortgagee's right in the land; the possession would not be presumed adverse.   *   *   *   But undoubtedly the mortgagor might make it adverse.   Suppose him to give explicit notice to the mortgagee, that, though he acknowledged the debt, he claimed to hold the land discharged of the mortgage; can any definition of adverse possession be imagined which would not include this, the party in possession, claiming in his own right, denying the right of him who afterwards seeks to set it up, and the latter being under no disability to hinder his proceeding at law.   It comes within the very letter and the very spirit of the statute."

Here the situation of the defendant as mortgagee is identical with that of the mortgagor in the foregoing case. There the mortgagor was holding against the legal title in the mortgagee; here the mortgagee held against the legal title in the mortgagors, and the facts here, where the claimant dispossessed her adversaries, make an even stronger case of adverse holding than that supposed by Chancellor Harper as a clear illustration of adverse possession.   It is undisputed that the defendant in the case at bar gave ex-

plicit notice to the mortgagors of her claim of title, founded upon the written instrument of February 26, 1897, not as a mortgage, but as a conveyance of the premises; that she denied that the mortgagors had any equity, right, or title under that instrument; that by the assertion of that claim she, in effect, evicted the mortgagors who were in possession; that she thereupon took possession under that claim of exclusive title and continued in uninterrupted possession of the premises, holding against the world, for a continuous period of over 21 years prior to the commencement of this action. We are therefore clearly of the opinion that the evidence is susceptible of no other reasonable inference than that defendant's possession of the premises was adverse from the beginning of her possession in November, 1897. See *Ouzts v. McKnight,* 114 S. C., 306; 103 S. E., 561. *Satcher v. Grice,* 53 S. C., 126; 31 S. E., 3.

The defendant moved for a directed verdict upon the ground, among others, that it appeared from the evidence that the defendant had "entered into possession of the premises described in the complaint under claim of title, exclusive of any other right, founding such claim on a written instrument, as being a conveyance of the premises in question," and that she had "been in continuous occupation and possession of said premises" for more than 10 years before the commencement of this action. Neither the pleadings nor the evidence raise any question as to whether defendant was entitled to rely on the instrument of February 26, 1897, which was in legal effect a mortgage, as color of title. It seems to have been assumed that if defendant's holding was "adverse" her possession extended to all of the land included in the instrument. The defendant based her claim of title upon that "written instrument, as being a conveyance of the premises in question," is undisputed. The primary function of the written instrument required by the statute (Section 321, Code Civ. Proc., 1922), as a condition to extending the benefit of constructive pos-

session to a claimant under such instrument, is to indicate and define the extent of the claim, and to identify the land so claimed. That "the extent of the occupant's claim founded on an instrument of writing is not dependent upon the validity of such instrument" is well settled. *Kennedy v. Kennedy,* 86 S. C., 499; 68 S. E., 664. *Allen v. Johnson,* 2 McMul., 495; 1 R. C. L., p. 711, §§ 23, 24. Where as in this case, possession is taken under a written instrument which the occupant repudiates as a mortgage, and claims to be a "conveyance of the premises," and where the adverse possession is proved by other evidence than the instrument, we see no reason why the writing should not be looked to, to define the extent of the claimant's possession. See *Turpin v. Brannon,* 3 McCord, 261; 1 R. C. L. p. 748, §§ 70, 71. *Borden v. Clow,* 21 Nev., 275; 30 p. 821; 37 Am. St. Rep., 511. *Peshine v. Ord,* 119 Cal., 311; 51 P., 536; 63 Am. St. Rep., 131. In any view, therefore, there was an adverse holding and possession by defendant of the lands in controversy for a continuous period of more than 10 years before the commencement of the action, and the plaintiffs' right of action was clearly barred, unless the running of the statute was tolled for a sufficient length of time by some disability of one or more of the holders of the legal title.

The undisputed facts are that, at the time defendant entered into the adverse possession of the land in November, 1897, Elizabeth E. Tate was the sole owner of the 100-acre tract. Mrs. Tate died (complaint) in September, 1905. She was and had been under no disability. Her right of action to recover her land, the 100-acre tract, accrued in November, 1897, and at her death the statute had been running against her for nearly 8 years. If at her death the title passed to any one under disability, the running of the statute was not thereby arrested. *Shubrick v. Adams,* 20 S. C., 52. *Duren v. Kee,* 26 S. C., 225; 2 S. E., 4. *Satcher v. Grice,* 53 S. C., 126; 31 S. E., 3.

*Maccaw v. Crawley,* 59 S. C., 348; 37 S. E., 934. *Sutton v. Clark,* 59 S. C., 451; 38 S. E., 150; 82 Am. St. Rep., 848. *Gaston v. Gaston,* 80 S. C., 163; 61 S. E., 393. *Fore v. Berry,* 94 S. C., 79; 78 S. E., 706, Ann. Cas., 1915A, 955. As a matter of fact at Mrs. Tate's death the title, as plaintiffs allege, descended to her daughter, Mrs. Amanda Frady, who was under no disability. At Mrs. Frady's death intestate in October, 1906, (complaint), it does not appear that any of *her* heirs at law were minors or under any other disability. Her daughter "E. D. Frady" (the plaintiff, Delilah E. Marlin), who was a minor, not younger than 17, in November, 1897, must at her mother's death in 1906, have been about 26 years of age. In no possible view of the facts, therefore, is there any basis for contention that the rights of the plaintiffs to recover any interest in the 100-acre tract had not long been barred by statute (Sections 317, 321, Code Civ. Proc., 1922), at the time of the commencement of this action in March, 1919.

As to the 50-acre tract, it is undisputed that in November, 1897, the sole owners as cotenants (under a deed from Elizabeth E. Tate) were Mary V. Hughes and E. D. Frady (now Delilah E. Marlin). At that time Mary V. Hughes was under no disability; Delilah E. Marlin was a minor, not younger than 17 years of age. The statute did not run against the minor, Mrs. Marlin, until her disability ceased (Section 327), and that suspension of the statute inured to the benefit of her cotenant (*Garnett v. Weinberg,* 48 S. C., 28, 47; 26 S. E., 3). But the statute commenced to run against both of them the moment the disability of the minor, Mrs. Marlin, ceased. That disability ceased when Mrs. Marlin became of age, which could not have been later than 1902. From that time forward the statute ran against her and her cotenant, and the period of 10 years within which they were entitled to assert their rights by action expired in 1912, 7 years before the commencement of the suit. That these two parties,

seeking as plaintiffs in this action to recover the 50-acre tract, are clearly barred is therefore not open to question. We are not inadvertent, in this connection, to the expression in the opinion on the first appeal to the effect that .the minority of Mrs. Marlin, who as "E. D. Frady" signed the instrument of February 26, 1897, would operate to protect "the adult mortgagors" from the running of the statute. That expression was evidently based upon the assumption of fact, as the facts there appeared to the Court, that Mrs. Marlin was a cotenant of both Mrs. Tate and Mrs. Hughes, the other parties to the mortgage, in the ownership of the whole of the 150 acres involved. That assumption of fact is not warranted here, either by the statement of facts set out in the complaint or by the evidence. Even, however, if the protection of Mrs. Marlin's infancy were extended to both Mrs. Tate and Mrs. Hughes, under the undisputed fact as to the time that protection ceased, in 1902, Mrs. Tate not having died until 1905, it would not change the result.

It follows that the rights of all the parties plaintiff to recover the real estate involved in this action are bar.ed by the Statute of Limitations, and the motion for a directed verdict, on the ground that the defendant had acquired and perfected title by adverse possession prior to the commencement of the action should have been granted.

The doctrine of "once a mortgage, always a mortgage," may not soundly be extended to abrogate the law of adverse possession and the Statute of Limitations. Doubtless, from the viewpoint of equity, there are some features of plaintiffs' case which commend it to favorable consideration. But, even from that viewpoint, there are considerations which justify the sound policy of the statute law which is clearly applicable here to defeat the plaintiffs' claim. There was negligent delay in the assertion of plaintiffs' alleged rights. What was said by an eminent Judge of this Court (Nott, J.), nearly a century ago, in *Turpin v. Brannon*, 3 McCord, 261, is still good sense and good law:

"These stale demands are not to be encouraged. Nothing tends more to disturb the quiet and repose of the community. Families are broken up, purchasers disturbed in their possessions, and creditors, who have trusted others upon the credit of their long possessions, are disappointed in their just expectations by some dormant claim which could not have been anticipated."

The foregoing conclusion renders unnecessary a consideration of the other questions raised by the appeal.

It is accordingly adjudged that the judgment of the Circuit Court be reversed and the case remanded, for the entry of appropriate judgment for the defendant under rule 27 of this Court.

Reversed.

Messrs. Justices Watts and Cothran concur.

Mr. Justice Fraser dissents.

Mr. Chief Justice Gary did not participate.

On Petition for Rehearing

*Per Curiam.* The Court is satisfied that no material question of fact has been overlooked, and that no controlling principle of law has been either overlooked or misapplied.

It is accordingly ordered that the within petition be and is hereby dismissed.