16180

HAM *ET AL.* v. FLOWERS *ET AL.*
HAM v. FLOWERS *ET AL.*
(51 S. E. (2d) 753)

*Messrs. W. T. McGowan,* of Timmonsville, *and John L. McGowan,* of Florence, *for Appellants,*

*Mr. D. Carl Cook,* of Hartsville, *for Respondents.*

February 7, 1949.

OXNER, Justice.

This appeal involves two actions in equity which are closely interrelated and, by consent of the parties, were consolidated in the Court below. Each suit was brought to redeem a tract of land from a mortgage and for an accounting of the rents and profits.

On March 31, 1920, appellant, S. Joseph Ham, for the purpose of obtaining supplies for 1920, executed and delivered to one W. Q. Flowers a mortgage for $1,000.00 covering 24 1/2 acres of land. The record does not disclose the date of maturity. Apparently the supplies furnished exceeded the amount of the mortgage and during the latter part of the year the mortgagee requested additional security. Accordingly, on December 6, 1920, appellants Columbus Ham, Florrie Williams and Janie Martin, at the request of their brother, S. Joseph Ham, executed and delivered to respondent Clarence W. Flowers, a son of W. Q. Flowers, a mortgage for $1,669.49 covering 27 acres of land, which was payable in four annual installments of $417.35, each, commencing October 15, 1921. This mortgage was executed solely for the purpose of providing additional security for the payment of the entire indebtedness owned by S. Joseph

Ham to W. Q. Flowers and his son, including the balance due on the mortgage executed on March 31, 1920. The last mortgage mentioned, however, was not satisfied but kept open. The mortgage for $1,669.49 was subsequently assigned by Clarence W. Flowers to his father. The fact that one of these mortgages was taken in the name of the father and the other in the name of the son is of no significance. It is conceded that their business transactions were handled interchangeably and that it was immaterial in whose name an obligation was taken.

In January or February of 1921, respondent, Clarence W. Flowers entered into possession of both tracts of land and had since continuously remained in possession. He and his father have collected the rents and profits but have never made any accounting to the mortgagors. Some timber has also been sold from both tracts. Appellants have paid no taxes since Flowers went into possession. According to the testimony of Florrie Williams, Columbus Ham and Janie Martin, they delivered possession to Flowers for the purpose of collecting the rents and profits and applying same on the mortgage indebtedness, with the understanding that the premises would be returned to them at the expiration of seven years. Florrie Williams further testified that she went to see Clarence W. Flowers and his father several times seeking a settlement, but was unsuccessful. She said that when she approached Clarence W. Flowers on one occasion in 1927, he claimed that "it was his land", "flewed up", and "wouldn't give me no satisfaction". S. Joseph Ham testified that in the fall of 1920 he paid W. Q. Flowers over $300.00 and also delivered to him four bales of cotton to apply on the mortgage indebtedness and during the early part of 1921 turned the premises over to him "upon the condition that he keep up those buildings and work the rest of this money out of the place". According to his testimony, there was no definite understanding as to the length of time Flowers was to remain in possession. Joseph Ham further testified that he was never able to obtain an accounting from

either W. Q. Flowers or his son, although he made repeated efforts to do so.

Respondent, Clarence W. Flowers, denied that he entered into possession of the premises under an agreement to apply the rents nad profits on the mortgage indebtedness. He said that in February, 1921, after learning that S. Joseph Ham had moved from the premises, hě took possession, without consulting appellants, "in order to protect my investment". According to his testimony, he has since treated the premises in every way as his own and was never called upon by any of the appellants for an accounting until this action was brought. The following is taken from his testimony on cross examination:

"Q. You state you own this land, how did you get title? A. I took possession of the land. It was left there and I had money in it. I just took the legal procedure in requiring title.

"Q. Did you foreclose any of the mortgages? A. If they are not foreclosed they are in a process to be foreclosed.

"Q. You can't get title until they are foreclosed? A. All I can say is that if they are not foreclosed they are in a process of being foreclosed and the title is in a process of being gained.

"Q. You have no title? A. I have.

"Q. What is it? A. Difference of opinion, I guess.

"Q. Do you know anything about the foreclosure proceedings that were started by W. Q. Flowers against Florrie Williams and Janie Martin, February 3, 1928? A. That was stopped by them deeding their property to me.

"Mr. McGowan objects to this unless he can produce the deeds". (It is conceded that Flowers was in error in stating that the mortgagors conveyed the property to him.)"

It appears that both tracts of land were sold to satisfy delinquent taxes and a deed to each tract was executed and delivered by the tax collectors of Darlington County to Clarence W. Flowers on January 10, 1927.

On February 2, 1928, a proceeding was instituted in the Court of Common Pleas for Darlington County by W. Q. Flowers against appellants, Columbus Ham, Florrie Williams and Janie Martin for the purpose of foreclosing the mortgage executed by them covering the 27 acre tract of land. The prayer of the complaint was for judgment for the full amount of the principal sum with interest and for a sale of the premises to satisfy the indebtedness. About the same time, the attorneys for the plaintiff in that action gave notice of a motion for the appointment of a receiver to take charge of the mortgaged premises and collect the rents and profits. This foreclosure proceeding was never carried to a conclusion and, so far as the record discloses, is still pending. W. Q. Flowers died intestate in 1938, leaving as his sole heirs-at-law the respondents on this appeal.

Both of these actions were commenced in June, 1947. One was brought by S. Joseph Ham against respondents to redeem the 24 1/2 acre tract from the lien of the $1,000.00 mortgage and the other by Columbus Ham, Florrie Williams and Janie Martin against respondents to redeem the 27 acre tract from the lien of the $1,669.49 mortgage. In each action respondents entered a general denial, alleged that Clarence W. Flowers was the sole owner in fee of the premises, claimed that Clarence W. Flowers had acquired title by adverse possession, and pleaded the statute of limitations.

Both cases were heard together in the Circuit Court upon testimony taken before a referee. The Court found that appellants had failed to establish their contention that Flowers went into possession under an agreement to collect the rents and apply same on the mortgage indebtedness, and held that Clarence W. Flowers had acquired title by adverse possession and that both actions were barred by laches. It was accordingly adjudged that Clarence W. Flowers owned the two tracts of land and both actions were dismissed. The mortgagors have appealed. None of the respondents other

than Clarence W. Flowers claim any interest in the premises. Respondent Flowers testified that his father had no interest in either of the mortgages at the time of his death. So that the controversy here is between the makers of the two mortgages and Clarence W. Flowers.

Flowers entered into possession before any part of either the principal or interest was due on this indebtedness. Both title and the right of possession were then in appellants. That title was not affected by the subsequent default in payment or the taking of possession by the mortgagee. Before taking possession the mortgagee had a mere lien upon the real estate pledged for the security of his debt. After doing so, he had in his possession the property pledged as his security, the title remaining as it was before. The right of redemption still existed and the relationship of mortgagor and mortgagee continued between the parties. Of course, such relationship "does not prevent a mortgagee in possession from holding adversely to the mortgagor's legal title, nor preclude him from perfecting legal title in himself by adverse possession". *Frady et al. v. Ivester*, 129 S. C. 536, 125 S. E. 134, 136. However, where a mortgagee enters with the permission, either express or implied, of the mortgagor, he occupies the premises in the *quasi* character of trustee for the mortgagor and cannot hold adversely to his rights until he distinctly disavows and repudiates his mortgagee relationship and notice thereof is brought home to the mortgagor. *Becker v. McCrea*, 193 N. Y. 423, 86 N. E. 463, 23 L. R. A., N. S., 754. It was held on the first appeal in *Frady et al. v. Ivester*, 118 S. C. 195, 110 S. E. 135, 138, that where the mortgagee's entry was permissive, "she could not hold adversely to the rights of the mortgagors until she either surrendered possession or gave notice of an adverse possession". In *Bradley v. Calhoun*, 125 S. C. 70, 117 S. E. 811, 815, the Court said: "The principle is just and well-established that, where one's possession was begun in privity with or in subservience to the title of another, a *quasi* fiduciary relation is established, and,

before a foundation can be laid for the operations of the statute of limitations or the defense of adverse possession by the acquisition of an outstanding title, a clear, positive, and continued disclaimer of the title under which he entered and the assertion of an adverse claim must be brought home to the other party. Until the trust is openly repudiated, the *cestui que* trust may rely upon the integrity of the trustee without endangering his right by lapse of time".

The whole controversy here depends upon the character of the possession taken and held by respondent Flowers. He says he found the premises unoccupied and took possession "in order to protect my investment", which could only mean that he took possession to protect his interest as a mortgagee of the premises. He entered by virtue of this relationship and no other. Any other view would place him in the position of a trespasser since the mortgagors were not in default at the time of entry. We will not do respondent Flowers, a man of some experience in business affairs, the injustice of assuming that he intended to deliberately and unlawfully seize and take possession of the lands belonging to appellants, who are poor, illiterate Negroes, for the purpose of holding said premises in utter disregard of all rights of the true owners. The only reasonable explanation of his conduct is that he entered into possession for the purpose of holding the premises as security for the mortgage indebtedness. His own testimony is at variance with his present contention that his entry was hostile to the title of appellants. Assuming, as Flowers contends, that he did not secure permission from appellants to take possession, they subsequently acquiesced in his doing so.

Having concluded that the possession of Flowers was not initially adverse, the next question is whether he thereafter repudiated the relationship of mortgagor and mortgagee and gave notice thereof to appellants. The only evidence tending to show any notice of an adverse holding is the statement heretofore mentioned which Florrie Wil-

liams claims was made to her by Clarence W. Flowers in 1927. This testimony could only be considered in connection with the 27 acre tract of land owned by Florrie Williams, Janie Martin and Columbus Ham, and could not affect the rights of S. Joseph Ham who owned the 24 1/2 acre tract. After the statement to Florrie Williams in 1927, a proceeding was instituted in 1928 to foreclose the mortgage on the 27 acre tract of land. In this proceeding judgment was sought for the full amount of the indebtedness and notice given of a motion for the appointment of a receiver to take charge of the premises and collect the rents. This action negatives any previous claim of adverse possession and is an admission that the relationship of mortgagor and mortgagee then existed. The institution of this proceeding is inconsistent with any pretension on the part of Flowers that his claim to the property was antagonistic to the rights of appellants. *Chapin v. Wright et al.,* 41 N. J. Eq. 438, 5 A. 574. Included in the indebtedness for which judgment was sought was the balance due on the mortgage executed by S. Joseph Ham. So far as the record discloses, this foreclosure proceeding is still pending and if Flowers intended to abandon it, no notice of such intention has ever been given to appellants. They had a right thereafter to assume that Clarence W. Flowers and his father remained in possession under a relationship of mortgagor and mortgagee.

What has been said also disposes of the question of the statute of limitations. Respondents have not called our attention to any statute specially prescribing the time in which an action to redeem must be instituted. We need not determine the length of time necessary to bar such an action because whatever the period may be, it would not commence to run under the circumstances of this case until notice of adverse possession was brought home to appellants.

Respondent Flowers acquired no title under the 1927 tax deed which could be set up against appellants' right of redemption. He was in possession, collecting the rents and profits from the premises. Under the terms of Section 2783 of the 1942 Code, he could have paid these taxes and included the amount paid with interest in the mortgage indebtedness. This section further provides that if a mortgagee pays taxes under these circumstances, he shall have a first lien on the property to the extent of the taxes paid, together with interest from the date of payment. We have recently held that if a mortgagee in possession purchases the property mortgaged at a tax sale, the title thus acquired will not defeat the mortgagor's right of redemption. *De Laine et al. v. De Laine et al.,* 211 S. C. 223, 44 S. E. (2d) 442.

A lengthy discussion of the question of laches is unnecessary. It is generally recognized that it is impossible to fix any definite length of delay which would justify a Court of Equity in refusing relief on this ground. The Court is vested with a wide discretion. *Bell v. Mackey,* 191 S. C. 105, 3 S. E. (2d) 816; *Jackson v. Johnson et al.,* 186 S. C. 155, 195 S. E. 239. Under all the circumstances of the instant case, we do not think the relief sought should be barred on the ground of laches.

There must be an accounting between the parties. Appellants are liable for the mortgage indebtedness, all amounts advanced by respondent Flowers for the payment of taxes, with interest thereon, and any expenses incurred by him in the preservation of the property. Respondent Flowers must be charged with the reasonable value of the use of the premises, the value of any timber sold and any waste committed. Upon payment by appellants of any balance found to be due, they are entitled to possession of the mortgaged premises, freed and discharged of the liens created by said mortgages.

Judgment reversed and the case is remanded for further proceedings in accordance with the views herein expressed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.