16707

FOGLE *ET AL.* v. VOID *ET AL.*
(74 S. E. (2d) 358)

84

*Messrs. Hydrick & Hydrick,* of Orangeburg, *for Appellants,*

*Mr. L. A. Hutson,* of Orangeburg, *for Respondent.*

Jan. 30, 1953.

STUKES, Justice.

Counsel for appellants and respondent agreed upon argument of this appeal that the only question for decision is whether the judgment for respondent should be affirmed upon the ground that he has acquired title to the land in dispute by adverse possession. 1 Code of 1952, 992 *et seq.,* Possession and Adverse Possession. The special referee and trial court so held and, as it is a legal issue, if there was any evidence which reasonably sustains the conclusion, it is binding upon this court. *Harrison v. Lanoway,* 214 S. C. 294, 52 S. E. (2d) 264. The case has become similar in its appellate aspect to *McGowan v. Reid,* 33 S. C. 169, 11 S. E. 685, in which it was said: "This case involves the features of both an action at law and an equitable action. In so far as it was sought to recover the land in dispute, it was an action at law, and although it was tried by the judge, a jury trial being waived, yet it was still a law case, and must be governed by the rules applicable to such cases, one of which is that the facts cannot be reviewed on appeal." Appellants' counsel also conceded that respondent is the owner of an undivided one-third interest by reason of the formal

conveyance to him in 1946 by the widow of the deceased intestate whose land it was. The judgment therefore affects only the remaining two-thirds interest. The whole is a small tract of eighteen acres of farm land, under cultivation but without buildings or timber.

The facts found by the referee and lower court, which are supported by the evidence, are that the respondent, William M. Void, a distant relative of the appellants, purchased for $295.10, and had assigned to him, the mortgage of the land by Wash Void, deceased, in the year 1926, was thereupon put in possession by the widow and children of Wash, all *sui juris,* and has thenceforward continued in uninterrupted possession, cultivating it and claiming it as his own, except during the two years 1946 and 1947 when he was wrongfully (as it turned out) dispossessed by the sheriff under a purported tax title. Having neglected to pay the taxes for several years, a defective tax sale was had and the purchasers were put in possession by the sheriff. The respondent promptly brought an action to set the sale aside and recover possession of the land, in which he was successful and regained possession by judgment filed October 29, 1947, by which he was required to pay all past-due taxes.

Moreover, many of the appellants, including the one who testified, heretofore (in 1948) brought a similar action to this against the respondent, which he defended and counsel for plaintiffs in that action consented to an order of dismissal dated January 18, 1949. The present action was subsequently instituted by service of summons and complaint on October 13, 1950.

The answer of respondent alleged purchase of the land from the heirs of Wash Void in 1926 for the consideration of the amount due on the outstanding mortgage which he paid and procured assignment to him from the holder of the mortgage, whereupon the heirs of the former owner, quoting from the answer, "conveyed to and put the defendant in possession of the property," and he has since held possession as owner in fee, planting and improving the property; he

further expressly pleaded adverse possession of over ten years, and of over twenty years. The prior action, similar to this, was also pleaded as a bar, as was the tax title litigation. It is reasonably inferable from the evidence that at the time (1926) of respondent's purchase of the mortgage, the land was worth no more than he paid.

Appellants mainly rely upon the authority of *Ham v. Flowers,* 214 S. C. 212, 51 S. E. (2d) 753, 7 A. L. R. (2d) 1124, with exhaustive annotation following the last cited report. However, distinguishing factual features are readily apparent in the case *sub judice.* There is no evidence that the respondent took possession as a mortgagee except the assigned mortgage, itself. He and the other parties are uneducated and appear to have acted without legal advice. It is otherwise inferable, as he claimed in his testimony, in effect, that he took the mortgage, which he purchased and had assigned to himself, as the equivalent of a deed to the property and when the heirs of the mortgagor put him in possession, he and they considered that his title was complete and indefeasible. The transaction seems to be well-stated in the following answer of respondent on cross-examination: "They told me that if I take the mortgage up they would turn the property over to me, none were able at the time to tend to the property."

The fact that he procured a deed from the widow twenty years later, in 1946, when his title was in question because of the invalid tax sale, rather strengthens his contention than weakens it. This deed, dated February 26, 1946, contained the following preamble:

"Whereas during the year 1926, William M. Void, took possession of the lands hereinafter described in which I, Lillie Void, had a 1/3 interest as the wife of Wash Void, deceased, over which he held a mortgage from Wash Void to H. E. Moorer, that was duly assigned to him as has held the lands adversely as his own and has continued in uninterrupted possession since said date without any protest, and Whereas I returned the said lands in my name, Lillie Void,

for taxation in which I have and do not claim to have any interest whatsoever and this deed of conveyance is made in order to eliminate any question, whatsoever, as to the ownership of the said lands by William M. Void."

Adjoining owners testified in behalf of respondent and corroborated his testimony of the adverse nature of his long-continued possession. We think it worthy of note that one of these witnesses was a minister of the fitting surname of Welfare.

Only one of the many appellants testified although there are three surviving children of Wash Void, the former owner, including the witness, according to her. The ever-recurring refrain of her testimony was that she had signed nothing, or, as she repeatedly said, she "had not touched a pen." Apparently she erroneously conceived this fact to be controlling of the controversy. She lives in a distant State and apparently asserted no claim of interest in the land until 1948 when she and others brought the first action, which was dismissed by consent in 1949.

The result and opinion in the second appeal of *Frady v. Ivester,* 129 S. C. 536, 125 S. E. 134, 137, support the judgment in this case. From it the following is quoted:

"The doctrine of 'once a mortgage, always a mortgage,' may not soundly be extended to abrogate the law of adverse possession and the statute of limitations. Doubtless, from the viewpoint of equity, there are some features of plaintiffs' case which commend it to favorable consideration. But, even from that viewpoint, there are considerations which justify the sound policy of the statute law which is clearly applicable here to defeat the plaintiffs' claim. There was negligent delay in the assertion of plaintiffs' alleged rights. What was said by an eminent Judge of this Court (Nott, J.,), nearly a century ago, in *Turpin v. Brannon,* 3 McCord 261, is still good sense and good law: 'These stale demands are not to be encouraged. Nothing tends more to disturb the quiet and repose of the community. Families are broken up, pur-

chasers disturbed in their possessions, and creditors, who have trusted others upon the credit of their long possessions, are disappointed in their just expectations by some dormant claim which could not have been anticipated.' "

It was earlier, similarly said in *Brockinton v. Lynch,* 119 S. C. 273, 112 S. E. 94, 105 : "The familiar maxim, 'once a mortgage, always a mortgage,' is too universal in its terms to be strictly accurate. As long as the original relation of debtor and creditor continues unimpaired, the expression is entirely accurate; it must be understood, however, as applicable alone to that limited condition. That which is originally a security for a debt cannot be converted by a contemporaneous agreement into an absolute conveyance; nor can it, so long as the original status continues, be converted into such by a subsequent agreement execpt upon a new and valuable consideration. It is apparent, however, that the universality of the maxim fails, when the purpose of a subsequent agreement is to terminate the relation of debtor and creditor; when, by such subsequent agreement, the creditor surrenders his rights as a creditor, and the mortgagor his rights as the holder of the legal title, the engagement of one forming the consideration for the engagement of the other. To still insist upon the application of the maxim would be to deny to the parties the right of freedom of contract and to the mortgagor the right to dispose of his property as his interest or pleasure might dictate."

For the reasons indicated, the judgment is affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.