16820

KNIGHT *ET AL.* v. HILTON *ET AL.*
(79 S. E. (2d) 871)

*Messrs. Murchison & West,* of Camden, *for Appellants,*

*Messrs. Frank M. Turner and F. Ehrlich Thomson,* of *Columbia, for Respondent,*

January 12, 1954.

OXNER, Justice.

This action was brought to partition two parcels of land in Dorchester County. Respondent, Julia Shuler Knight, set up claim of title to one of the parcels containing fifty acres. She alleged that her husband, S. P. Knight, acquired title to this tract by adverse possession, which is now vested in her as his sole heir-at-law. The case was referred to the Master for Dorchester County. He found that respondent had failed to sustain her claim of title and recommended that the premises be partitioned. On appeal to the Circuit Court,

the findings of the Master were reversed and that Court held that respondent had established her defense of adverse possession. This appeal followed.

The Peoples Bank of Harleyville, South Carolina, by deed dated April 4, 1923, in consideration of $1,000.00, conveyed the 50 acre tract in controversy to T. W. Knight and Cecil G. Knight. On April 14, 1923, the grantees in the foregoing deed, who were brothers, along with their mother, Mrs. Ada A. Knight, executed and delivered to S. P. Knight, another brother, a note for $1,000.00, payable one year after date, which was secured by a mortgage executed by T. W. Knight, Cecil G. Knight and Mrs. Ada A. Knight, covering the 50 acre tract of land described in the foregoing deed, together with an adjacent tract of one acre owned by Mrs. Ada A. Knight, which had been set aside to her as a homestead.

The testimony relating to adverse possession is very meager, which is perhaps due to the fact that the grantees and mortgagee above mentioned are now dead. Cecil G. Knight died in June, 1945; T. W. Knight in September, 1948; and S. P. Knight died in September, 1949.

Apparently the only person in a position to furnish any information as to the use and occupancy of the 50 acre tract was Percy Knight, another son of Mrs. Ada A. Knight. According to his testimony, his mother and some of the children lived in a residence on the homestead and farmed the adjacent 50 acre tract until the death of Mrs. Ada A. Knight about 1928 or 1929. Shortly thereafter T. W. Knight and Cecil G. Knight moved away. The property was then occupied for a number of years by various tenants, but the record does not show the amount of rent nor to whom paid. Percy Knight testified that he moved on the property some time between 1930 and 1935 (he was unable to definitely fix the year), and continued to reside thereon until shortly prior to the commencement of this action. He said that he paid $60.00 per year rent for both parcels to his

brother S. P. Knight as long as he lived, and after his death to respondent. During this period some timber was sold but Percy Knight was unable to state the amount realized or how the money was disbursed. He was asked whether or not he considered S. P. Knight the owner of the property during the time he rented it and replied, "I suppose so". However, he admitted writing a letter to the widow of T. W. Knight, inquiring what she would take for her interest in the place, and stating that he "knew she had an interest as we all did."

Respondent, the widow of S. P. Knight, was unable to furnish any material information on the question. She stated that she never heard her husband discuss the ownership of the 50 acre tract. She was under the impression that he had bought and acquired title to this property from the Peoples Bank of Harleyville. She further stated that the rent paid to her husband was $50.00 per year instead of $60.00 as testified by Percy Knight.

The mortgage to S. P. Knight which was executed on April 14, 1923, was not recorded until August 14, 1929. At his death he had in his possession both the mortgage and the deed from the Peoples Bank of Harleyville to his brothers T. W. Knight and Cecil G. Knight. A nephew of respondent testified that in looking through the papers of S. P. Knight, he found this deed, called it to the attention of respondent, and had it recorded on October 28, 1949.

The property was returned for taxation in 1928 in the name of T. W. Knight and Cecil G. Knight but thereafter in the name of S. P. Knight, who paid the taxes.

There is no evidence of any payment or demand for payment on the mortgage held by S. P. Knight. Respondent's claim that her husband held the property adversely for more than ten years is based on the fact that after the premises were occupied by Percy Knight, S. P. Knight collected the rents and paid the taxes, but the record is entirely silent as to why he did so.

The Circuit Judge held that respondent had established title by adverse possession. This being a legal issue, it must be conceded that his conclusion is binding upon this Court if there is any evidence reasonably tending to sustain it. *Weston v. Morgan,* 162 S. C. 177, 160 S. E. 436; *Fogle v. Void,* 223 S. C. 83, 74 S. E. (2d) 358. However, the facts before us are undisputed and the question presented is purely a legal one.

It is clear that the legal or record title to the 50 acre tract is vested in the heirs-at-law of T. W. Knight and Cecil G. Knight. Possession is presumed to follow such title and the burden is on the respondent to prove all the facts necessary to establish adverse possession. *Love v. Turner,* 71 S. C. 322, 51 S..E. 101; *Stokes v. Murray,* 102 S. C. 395, 87 S. E. 71; *Weston v. Morgan, supra.* "The mere possession of land does not in and of itself show hostility to the owner thereof. Indeed, there is every presumption that such an occupancy is in subordination to the legal title." 1 Am. Jur., Adverse Possession, Section 138. Among other elements which it is necessary for respondent to prove is that any possession on the part of her husband was hostile from its inception. *Weston v. Morgan, supra,* 162 S. C. 177, 160 S. E. 436. In determining what amounts to hostility, the relation which the party claiming adverse possession occupies with reference to the owner is important. 1 Am. Jur., page 873. As a general rule, the law presumes that the exclusive possession of land by one who is a stranger to the holder of the legal title is adverse. *Knotts v. Joiner,* 217 S. C. 99, 59 S. E. (2d) 850. But the family or other relation may be such as not to create such presumption. 2 C. J. S., Adverse Possession, § 216(b). In *Whitaker v. Jeffcoat,* 128 S. C. 404, 122 S. E. 495, 496, Mr. Justice Cothran stated that where one seeks to acquire title by adverse possession against his brothers and sisters, such a claim should not be sustained "except upon a clear preponderance of the evidence."

There is no contention that S. P. Knight was ever in actual possession of the premises in controversy.

Assuming that he was constructively in possession through Percy Knight as his tenant, was such possession adverse? We do not think under the circumstances of this case that a hostile holding can be presumed from the fact that S. P. Knight collected the rents and paid the taxes, which are the only acts of hostility claimed. Respondent alleged in her answer that her husband went into possession, claiming ownership and title, in 1928. If so, it is rather strange that during the following year he recorded his mortgage on the premises, a recognition that his relationship was then that of mortgagee. Paraphrasing the language used in *Ham v. Flowers,* 214 S. C. 212, 51 S. E. (2d) 753, 7 A. L. R. (2d) 1124, it certainly would be uncharitable to assume that he intended to enter and wrongfully take possession under a claim of title against his brothers. On the contrary, the presumption is that he entered lawfully. 36 Am. Jur., Mortgages, Section 265. When the family relation is considered, together with the fact that he held a past-due mortgage on the premises, it is reasonable to suppose from the scanty facts before us that S. P. Knight entered as mortgagee under some arrangement whereby he was to collect and apply the rents on the mortgage indebtedness. Be that as it may, the burden was upon the respondent to show that the entry was a hostile one and this she has not done. Indeed, the fact that after the death of S. P. Knight, respondent's nephew, with her acquiescence, recorded the deed to T. W. Knight and Cecil G. Knight rather indicates that she did not consider her husband as the owner of the property.

If, as we have held, the entry of S. P. Knight was not hostile but under his mortgage, he occupied the premises in the *quasi* character of trustee for the mortgagors and could not hold adversely to their rights until he distinctly disavowed and repudiated his mortgagee relationship and notice thereof was brought home to the mortgagors. *Ham v. Flowers, supra,* and cases therein cited. Of

course, a foundation may be laid by a mortgagee in possession for the operation of the statute of limitations or for the acquisition of title by adverse possession where there is a disavowal of the mortgagee relationship and notice of an adverse holding is brought home to the mortgagor. *Frady v. Ivester,* 129 S. C. 536, 125 S. E. 134; *Fogle v. Void, supra,* 223 S. C. 83, 74 S. E. (2d) 358. But there is no evidence here of a repudiation by S. P. Knight of the mortgagee relationship or of any notice to his brothers that he was claiming adversely.

What has been said also disposes of respondent's contention that the action is barred by Section 10-124 of the 1952 Code which provides that no action for the recovery of real property shall be maintained "unless it appear that the plaintiff, his ancestor, predecessor or grantor, was seized or possessed of the premises in question within ten years before the commencement of such action." As pointed out in *Ham v. Flowers, supra,* 214 S. C. 212, 51 S. E. (2d) 753, 7 A. L. R. (2d) 1124, neither this statute nor any other statute of limitations would commence to run under the circumstances of this case until notice of adverse possession was brought home to the mortgagors.

There remains for determination the rights, if any, of respondent under the mortgage given to her husband. The Master concluded that since this mortgage was executed in 1923, its lien had now expired and the right to foreclose same was barred. On appeal to the Circuit Court, respondent vigorously challenged this conclusion and asserted that in the event that her claim of title by adverse possession was denied, she was entitled to retain possession of the land until the mortgage debt, including interest, was paid. The Circuit Judge did not reach or undertake to pass upon this question because of his conclusion that respondent had established title by adverse possession. However, having denied the claim of title by respondent, it is necessary for us to determine her rights under the mortgage.

The life of the mortgage given to S. P. Knight was twenty years from maturity. During that period, the owner of the mortgage had the right to foreclose and the mortgagors had the right to redeem. It was stated in *Leland v. Morrison,* 92 S. C. 501, 75 S. E. 889, 893: "The right to foreclose and the right to redeem are reciprocal. When the right of one exists, the other exists. When one is barred, the other is barred." In the instant case during this twenty year period no effort was made to foreclose and the mortgagors did not seek to redeem. The mortgagee simply continued to collect the rents and pay the taxes until he died and thereafter respondent did so. As mortgagee in possession, respondent now has a right to retain possession of the premises until her debt is paid, although an action on the debt or a suit to foreclose her mortgage is barred by the statute of limitations. This principle is well established by the authorities. 36 Am. Jur., Mortgages, Section 268; Annotation 115 A. L. R. 339.

There must be an accounting between the parties in accordance with the principles announced in *Ham v. Flowers, supra.* Respondent is entitled to the payment of the amount due on her mortgage, including interest, and reimbursement for all taxes paid by her and her husband. Against this, she should be charged with all rents collected by her or her husband, together with any other income received from the property. Upon payment by appellants of any balance found to be due, they are entitled to possession of the premises. Should appellants fail to pay said balance within such reasonable time as may be fixed by the Circuit Court, their right of redemption shall be forever barred.

Judgment reversed and the case is remanded for further proceedings in accordance with the views herein expressed.

BAKER, C. J., STUKES and TAYLOR, JJ., and G. BADGER BAKER, A. A. J., concur.