## 17183

WILLIAM D. WATSON, ANNIE W. EUSTLER, NAN DeLOACH THURMAN, MARGARET THURMAN WANNAMAKER, Respondents, and EVA R. WATSON, CARL B. WATSON, EDWIN R. WATSON, RODERICK B. WATSON, T. B. WATSON, JR., JOHN C. WATSON, Respondents-Appellants, v. LILA WATSON LITTLE, Appellant-Respondent.

(93 S. E. (2d) 645)

*Messrs. Leppard & Leppard* of Chesterfield, and *A. L. Hardee* and *W. T. McGowan, Jr.,* of Florence, *for Appellant-Respondent,*

488

*Messrs. Knight & Bell* and *Ney B. Steele,* of Chesterfield, and *L. C. Wannamaker,* of Cheraw, *for Respondents,*

*Messrs. Knight & Bell* and *Ney B. Steele,* of Chesterfield, and *L. C. Wannamaker,* of Cheraw, *for Respondents-Appellants,*

*Messrs. Leppard & Leppard,* of Chesterfield, and *A. L. Hardee* and *W. T. McGowan, Jr.,* of Florence, *for Appellant-Respondent,* in Reply,

*Ney B. Steele, Esq.,* of Chesterfield, *for Respondents-Appellants, in Reply,*

July 10, 1956.

T. B. GRENEKER, Acting Associate Justice.

This action comes from Chesterfield County where it was instituted on October 4, 1950. The complaint sets forth that

the plaintiffs and the defendant own, as tenants in common, certain now valuable business buildings and lots located in the Town of Cheraw and demands partition as well as an accounting for the rents and profits arising from the defendant's possession and use of the property.

There is one appeal on behalf of Lila Watson Little, defendant below, who is designated in the transcript as appellant-respondent, as well as an appeal by certain of the parties who were plaintiffs below and designated in the transcript as respondents-appellants. With a view to clarity, the appellant Lila Watson Little is hereinafter referred to as the defendant, and the other appellants are referred to as plaintiffs.

All questions as to title have heretofore been determined by a decision of this Court in the case of *Watson v. Little,* 224 S. C. 359, 79 S. E. (2d) 384; and reference to that decision will be of great assistance for a clear understanding of the questions for determination in the present case.

Following that decision, all the equitable issues were referred to the Master for Chesterfield County to take the testimony and report his conclusions. He filed his report, and exceptions thereto were taken by certain of the plaintiffs and by the defendant. Judge Lewis on January 27, 1955, affirmed the report and recommendations of the Master except as to any error in the calculation of the account therein and ordered the account brought up to date. The defendant moved for a modification of this Order of January 27, 1955, and the same was modified by Judge Lewis in his Order dated March 19, 1955. The cause was returned to the Master, who filed his second report on June 21, 1955, and exceptions were taken by the defendant. On August 12, 1955, Judge Lewis sustained the exceptions of the defendant which challenged the failure of the Master to allow the offset to defendant with respect to the mortgage indebtedness as reduced by the rents and profits received by the defendant. The actual amount of the offset was calculated and fixed by the Order of Judge Lewis dated September 24, 1955.

In due time defendant gave notice of appeal from the Order of Judge Lewis of January 27, 1955. This constitutes the first appeal and two questions are presented:

1. Was the evidence admissible that formed the basis for the holding that the defendant is entitled to only the sum of $1,525.23 as credit for repairs and improvements to the property involved?

2. Does not the preponderance of the competent evidence establish that the credit allowed defendant for the repairs and improvements is grossly inadequate and does not the preponderance of the evidence establish the value of the said repairs to have been at least in the sum of $7,350.50?

On September 27, 1955, certain of the plaintiffs served notice of intention to appeal from the Orders of Judge Lewis dated January 27, 1955, March 19, 1955, August 12, 1955 and September 24, 1955. This constitutes the second appeal and three questions are presented:

1. Do the Orders of Judge Lewis dated March 19, 1955 and August 12, 1955 constitute the law of the case?

2. Was the defendant, Lila W. Little, entitled to interest on the debt claimed against the heirs at law of T. B. Watson commencing in 1923, while the plaintiffs, who are the heirs at law of T. B. Watson, are not allowed interest on rents and profits with which the defendant was charged on the warehouse property commencing in the year 1938?

3. Are the attorneys for the plaintiff entitled to an attorney's fee out of the common fund?

In defendant's printed brief it was contended that the question raised by Ground One of plaintiff's appeal came too late. However, in oral argument this position was abandoned, and all grounds of both appeals have been considered.

The defendant went into possession of the premises, paid past due taxes and began improvements to the buildings with the view of renting same. The value of these improvements is now the issue made by defendant's appeal.

However, it now has been determined that the plaintiffs in this action own three-fifths of the fee and the defendant

owns only two-fifths thereof. Upon the testimony offered on the accounting between the parties, the Master found that the defendant should be required to account to the plaintiffs for three-fifths of the sum of $10,248.92, which amount represented the net rents and profits held by the defendant after making deductions for repairs and improvements. Exceptions were filed by the defendant charging error in the findings of the Master with respect to the foregoing amount, but the report was affirmed by the trial judge. The appeal on behalf of the defendant charges error in the amount of the credit that has been allowed to the defendant for the repairs and improvements, she contending that the amount allowed should have been calculated on the basis of the estimate of her witness, J. F. McBride, who testified that the work done on the buildings was worth $7,350.50. The plaintiffs contended that the value of the improvements and repairs on the buildings was not more than $1,525.23.

The amount found by the Master was concurred in by the trial judge, and it is well established that in an equity case findings of fact by a Master and concurred in by a circuit judge will not be disturbed by the Supreme Court unless it appears that such findings are without evidentiary support or are against the clear preponderance of the evidence. *Peoples National Bank of Greenville v. Manos Brothers,* 226 S. C. 257, 84 S. E. (2d) 857, 45 A. L. R. (2d) 1070, and *Archambault v. Sprouse,* 218 S. C. 500, 63 S. E. (2d) 459. *Newton v. Batson,* 223 S. C. 545, 77 S. E. (2d) 212 and *Dean v. Dean,* S. C., 93 S. E. (2d) 206.

Was the finding of the Master, concurred in by the circuit judge, without evidentiary support or against the clear preponderance of the evidence? We think not. It is true that the witness McBride, offered by the defendant, placed a value of the repairs, done about 1941, at a much higher figure than that found. However, the record also reveals that there was testimony to the contrary. The Master saw and heard the witnesses, went upon the premises

and he was in a better position to judge whom and what to believe than this Court. The amount found was within the range of the testimony. We can find no reasons for disturbing his conclusions as to the amount he allowed for the repairs, and concurred in by the trial court.

In arriving at the amount to be accounted for by the defendant, there was admitted in evidence a ledger sheet from the business records of Little Brothers. Little Brothers was a partnership composed of J. W. Little and George Little, who were brothers and sons of the defendant Lila W. Little. It appears that they for many years conducted their business on a part of the property involved in this action and rented by them from their mother. During their occupancy, they collected the rents from the tenants of the other parts of the property; they made many repairs on the property for their mother; they charged their own rent collected by them against the repairs which they made. The defendant also, during this time, seems to have traded with her sons and, among other things sold them timber. Little Brothers finally became involved in litigation between themselves, and it appears that in some way Lila W. Little, though not a party to the litigation between the Little Brothers, had in her possession $18,793.39 admittedly belonging to Little Brothers. At some point during the litigation, upon motion before Judge Lewis, this money, with the exception of $1,939.88 was ordered to be deposited by Lila W. Little to the credit of Little Brothers.

In Paragraph 15 of the complaint, in the case of *J. W. Little v. George T. Little,* it was alleged that "Little Brothers are indebted unto the said Mrs. L. W. Little in the amount of $1,939.88, as disclosed in the annexed statement marked Exhibit A and the said Mrs. L. W. Little is entitled to and should be permitted to withhold said amount of $1,939.88 from the funds so held by her and in settlement of such indebtedness to her." All of these records were in the possession of the court when Judge Lewis passed his Order of March 25, 1950, directing that Mrs. Little turn over to

Little Brothers this sum of money less $1,939.88 representing "an uncontested claim of Mrs. Little." And Judge Lewis' Order was made pursuant to Paragraph 15 of the complaint, above set out, in the Little Brothers litigation. Mrs. Little accepted the money pursuant to this order. She now contends that she has never had an accounting with Little Brothers and that the statement should not have been admitted into evidence. It is admitted by all parties that Mrs. Little's sons actually made the repairs and improvements, and this is made very clear by the following testimony of J. W. Little:

"Q. Why were George T. Little and J. W. Little spending money on the Battery property? A. We were fixing it up for my mother.

"Q. Why were you fixing it up for your mother? A. Because she was not capable of handling it. She had all that she could do.

"Q. What did the timber have to do with these checks? A. We owed her quite a bit of money. We spent the money on repairs of her buildings. ·

"Q. You were paying her for timber with these checks? A. Not exactly. We were paying bills, and one would offset the other. We had the timber and the ability to get the work done and pay the bills.

"Q. She never repaid you for this? A. We had the timber . . .

"Q. Mr. Little, were the repairs that Mr. McBride has estimated on the buildings done by you and G. T. Little while you were occupying the building, or before you started to occupy the building? A. Part of the repairs were done before we started occupying the buildings and part after we occupied the John Deere building. We never did occupy the bakery. We rented it to a Mr. Munn.

"Q. The repairs were done by you and G. T. Little? A. Yes, sir, or rather we had them done.

"Q. You paid for them? A. Yes.

"Q. Has Mrs. Little paid this? A. Not straight out by check to that effect. * * *

"Q. While you were making these repairs, did you keep an account of how much you were spending on her property? A. At that time, no, but we know what we did—

"Q. I don't doubt that you know what you did. * * * Did you keep a record of it as you went along? A. No, sir, we didn't keep an itemized statement.

"Q. Then it is your testimony that all of the repairs were done by you and your partner G. T. Little? A. Yes, sir.

"Q. They were paid for out of a partnership account? A. Yes, sir."

The record also reveals the following testimony by Mrs. Little, the defendant:

"Q. Have you had a settlement with them of this account that you owed Little Brothers Implement Company for your farming supplies? A. That would come under the regular settlement and we haven't had it.

"Q. Your answer then is no? A. No.

"Q. Do you have any records of what Little Brothers Implement Company got from you? A. No, I don't have any.

"Q. Do you have any records of what you got from Little Brothers Implement Company? A. No, I don't have that.

"Q. I don't mean with you, do you have them available? A. I don't have them available."

It was alleged in the complaint of the Little Brothers litigation that the ledger sheet, Exhibit A, reflected the correct status of the account between the defendant herein and Little Brothers. It must be kept in mind that J. W. Little, a party to this litigation, was the same witness who testified in the present cause on behalf of the defendant. The defendant also testified. Both were testifying as to what the defendant was claiming for repairs, the very question involved in this appeal. Therefore we think it was perfectly proper that these two witnesses be examined as to any statements made in writing or otherwise which they made or upon which they had acted or received benefit therefrom. It cannot be denied that the sole basis for Mrs. Little retaining

the sum of $1,939.88 was the Order of Judge Lewis dated March 25, 1950 and that this Order was based upon Schedule A. This Schedule or ledger sheet was the record of the agents of defendant concerning the very matter under inquiry. In the suit between the Little Brothers, it was alleged that this schedule was correct. Can Mrs. Little, having received the sum shown by the schedule in settlement of her dealings with Little Brothers, now repudiate that statement and say that she should not be controlled by it? It was she who had in her possession the sum of $18,793.34, and it was she who wrote the checks when depositing this money pursuant to the Order of Judge Lewis. And there can be no reason successfully advanced to even intimate that Mrs. Little was not aware of what she was doing.

The trial court, in commenting upon the above question, said: "The now claimed ignorance of the witness, J. W. Little, and the defendant of this ledger sheet and its use to procure the aforesaid Order of this Court is unexplained in this record." With this we quite agree, and it may be of some interest to remember that on March 25, 1950, when this settlement between the present defendant and Little Brothers was made, the defendant then was claiming the entire property, and it was not until December 8, 1953, when the case of *Watson v. Little, supra,* was decided, that the defendant was confronted with the fact that she owned only a two-fifths interest, nor was it established before then that she would later be required to account for the rents and profits from her use of the whole of the said property. From a careful review of the record, we conclude that the sons of Mrs. Little, in making the various repairs on the buildings and collecting the rents therefrom, were acting as her agents. They kept all the records and she testified that she kept none. Prior to the introduction of this ledger account, the defendant's then counsel (Tr. f. 538) introduced in evidence the very Order of Judge Lewis dated March 25, 1950. Also introduced at the same time (Tr. f. 536) was the complaint in the case of *J. W. Little v. George T. Little,* and it was

agreed that Schedule 12 of the complaint would be intro-
duced (Tr. f. 547). There can be no doubt that "Schedule
12" of the complaint is the same as "Exhibit A" mentioned
in the Order of Judge Lewis and set out on page 172 of the
transcript. When the complaint above referred to was intro-
duced, defendant's then counsel specifically stated. " * * *
We would like to have 'Schedule 12' if at all possible and
would like to introduce that in order of proof."

Defendant cites 20 A. J. 1077 which sets forth the
general rule that a person's books of account cannot
be used as evidence upon issues between third persons.
Entries in such books as to such third persons are *res inter
alios acta* and cannot be used against persons not parties
to them.

With this general rule we agree, but this same authority
also holds that on issues between third parties books of
account may be used to contradict, corroborate or explain
other evidence, and entries in the books of a third person
not a party to the action but a witness therein are admissible
in evidence for the purpose of impeaching him.

When two or more parties have participated in any pro-
ceeding which results in a final decree or have received bene-
fits by virtue of that decree, and acted upon it, we can see
no sound reason why either of these parties should not be
fully examined relative thereto, when they later testify con-
trary to the provisions thereof.

We now turn to a consideration of the appeal on behalf
of certain of the plaintiffs. It appears that the property in-
volved was originally owned by R. J. Little and T. B. Wat-
son, both of whom died intestate. The defendant is the widow
of R. J. Little, and she, with her children, inherited from the
said R. J. Little. The property of T. B. Watson was inherited
by his wife and children. In 1929 T. B. Watson gave two
mortgages to Lila W. Little covering the Battery and ware-
house property. In 1938 Lila W. Little went into possession
and control of the entire property herein involved and, in

1946, obtained a deed to the property from the Forfeited Land Commission, and she then claimed absolute title thereto. However, it was determined by the Supreme Court that the defendant could not, by purchase at a tax sale, acquire any rights in the Battery property against her cotenants, and an accounting was ordered to adjust the equities of the parties to the action. The defendant claimed an offset against the interest of the heirs of T. B. Watson because of the indebtedness owed to her by reason of the late T. B. Watson having executed to her certain mortgages of real estate.

The circuit judge held that the offset should be allowed and cited *Anderson v. Purvis,* 211 S. C. 255, 44 S. E. (2d) 611, 615, and we quote from that opinion:

"The question naturally arises, can the plaintiffs, who are legatee and assignee of the mortgage, now compel payment of the mortgage indebtedness by foreclosure in a court of equity until the respondent has been compensated for his professional services, even though, were the respondent asking affirmative relief or attempting to recover in an action at law, his debt would be barred by the statute of limitations. Under the principles and doctrines of equity, before the plaintiffs can obtain from the court the relief asked for, they must give to the respondent that to which he is justly entitled. If there is a distinctively equitable right to which the defendant is entitled, even though not at common law, the court will make it a condition precedent to the relief of the plaintiffs that they shall grant to the respondent such equitable rights. More especially is this true where the rights of the parties grow out of the same subject matter or the same transaction. 19 Am. Jur., Sec. 466, Page 322. * * *

"The fact that a debt is barred by the statute of limitations in no way relieves the debtor from his moral obligation to pay it. Moreover, as stated, one of the maxims which courts of equity should always act upon is, 'He who seeks equity should do equity.' In accordance with this maxim, we think the plaintiffs should be denied affirmative relief until the

money justly due the respondent is credited on the mortgage."

We do not think that this offset should be barred by the doctrine of laches. Plaintiffs have been permitted to assert rights to the property which had been in the exclusive possession of another for many years, and we feel that the holding in the case of *Ham v. Flowers,* 214 S. C. 212, 51 S. E. (2d) 753, 757, 7 A. L. R. (2d) 1124, is conclusive of the question, contrary to the plaintiffs' contention. In *Ham v. Flowers, supra,* the owners of a tract of land were allowed to recover that land from mortgagees who had been in possession of the land from 1921. The mortgages had been given in 1920. The court held that none of the relief sought should be barred on the ground of laches, and the accounting that was ordered is similar to the accounting directed by the circuit judge in the instant case, as may be seen from the following quotation of the opinion by Justice Oxner:

"There must be an accounting between the parties. Appellants are liable for the mortgage indebtedness, all amounts advanced by respondent Flowers for the payment of taxes, with interest thereon, and any expenses incurred by him in the preservation of the property. Respondent Flowers must be charged with the reasonable value of the use of the premises, the value of any timber sold and any waste committed. Upon payment by appellants of any balance found to be due, they are entitled to possession of the mortgaged premises, freed and discharged of the liens created by said mortgages."

By their second exception, the plaintiffs find fault with the calculation of interest as contained in the Order of Judge Lewis dated September 24, 1955.

By the Order of August 12, 1955 it was determined that the mortgagee, Mrs. Little, was entitled to an offset against the share of the heirs of T. B. Watson in the Battery property. The amount of the offset was fixed, in that Order, to "consist of a calculation of the mortgage indebtedness at the

rate of six (6%) per cent simple interest, giving credit at the end of each year for the amount of rental for that year, or payment made, striking a balance at the end of each year." This calculating was made and is contained in the Order of September 24, 1955, which also allowed the defendant credit for certain amounts expended by her on the property during the year 1946.

The calculation of interest is strictly as provided in ▮ the Order of August 12, 1955 and in conformity with the established rules of law governing the same in this state. *Ham v. Flowers, supra,* and *Knight v. Hilton,* 224 S. C. 452, 79 S. E. (2d) 871, 875.

In the last cited case, some of the facts were very similar to the facts in the instant case. We quote from that case:

"Respondent is entitled to the payment of the amount due on her mortgage, including interest, and reimbursement for all taxes paid by her and her husband. Against this, she should be charged with all rents collected by her or her husband, together with any other income received from the property."

This is what the Order of Judge Lewis provided, and the calculations were made accordingly.

The interest seems to have been calculated in accordance with the rule established in *Wright v. Wright,* 2 McCord 185, which holds:

"The rule for calculating interest, when partial payments have been made, is to apply the payment in the first place to the interest due, and the surplus to the principal. Subsequent interest is to be calculated on the balance of principal remaining due. If payment be less than the interest, the surplus of interest is not to be added to the principal."

The final exception on behalf of the plaintiffs is that the trial judge should have allowed plaintiffs' attorneys a fee out of the common fund. Section 10-2211 of the 1952 Code expressly provides that the court may, in partition proceed-

ings, fix the attorney's fees and assess such fees against any or all of the parties in interest.

It is therefore obvious that this is a question for the discretion of the trial judge. Judge Lewis, in passing upon this request, stated:

"In the settlement of the equities between the parties, I think it proper that this request be denied."

The exercise of a judge's discretion in such matters will not be disturbed by this Court unless it is shown that there has been an abuse thereof. No such showing is made here.

The very long and complicated record has been thoroughly considered, and we. are of the opinion that all exceptions should be and the same are hereby overruled and the judgment of the lower court affirmed.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.