## 9412

### DICKSON *ET AL.* v. EPPS *ET AL.*

(89 S. E. 354.)

1. EVIDENCE—ADMISSIBILITY—SELF-SERVING ACTS.—While a party to a land suit cannot prove in aid of his own title his acts or declarations, one defending under claim of adverse possession may show that he gave a mortgage and an option for the timber, as evidence of character of his possession.

2. EVIDENCE—CONCLUSION—ADMISSIBILITY.—A witness in suit defended on the ground of adverse possession may relate acts of possession or ownership, but cannot say who has been in possession.

3. JURY—NATURE OF ACTION— INJUNCTION— ANSWER— NEW MATTER— EFFECT.—Although plaintiff's suit was to restrain defendants' alleged trespass, where defendants set up adverse possession, the nature of the case was to·be determined from the whole pleadings, and the issue of title to land was properly left to the jury.

4. QUIETING TITLE—CONFLICTING PAPER TITLE—EVIDENCE.—Defendant's paper title, beginning in 1836, is of equal force and effect with plaintiff's beginning a century before, if it covers the same land.

5. ADVERSE POSSESSION — CHARACTER OF POSSESSION — TIME.—Although one has possession of land for 20 years, it is not presumed that the land was acquired from the State, nor is title acquired unless such possession was adverse.

6. TRIAL—INSTRUCTIONS—CURE OF ERRORS.—Although in one instruction the Court correctly submitted the issue of adverse possession, there was error if other instructions given on request incorrectly stated or confused the issue. ·

7. JUDGMENT — VERDICT AND JUDGMENT — VARIANCE. — In a suit to restrain alleged trespass, where defendants set up adverse possession, and, on submission by agreement of issue of title, the verdict was simply "for the defendants," decree that defendants were the fee-simple owners of the land was improper.

Before BOWMAN, J., Manning, February, 1915.  Reversed.

Action by Joseph S. Dickson and another against D. Mitchell Epps and another, for injunction against repeated and continuous trespasses on lands in possession of plaintiff. From judgment for defendants, plaintiffs appeal.

*Mr. Charlton DuRant,* for appellants, cites: *As to self-serving declarations:* 48 S. C. 484, 486; 36 S. C. 598 *Relevancy of mortgage:* 53 S. C. 31.  *Adverse possession:* 14 S. C. 552; 22 S. C. 167.  *Charge in reference to adverse possession was charge on facts; issue for jury:* 81 S. C. 54; 83 S. C. 56 and 68; 52 S. C. 472; 58 S. C. 222; 61 S. C. 556; 76 S. C. 49; 78 S. C. 103; 81 S. C. 541.   Code Civil Proc., sec. 128.

*Messrs. Stoll, Stoll & O'Bryan,* for respondents, cite: *As to acts showing extent of occupant's claim:* 2 Hill 492; 2 Rich. 626; 1 McC. 278; 16 S. C. 132; 45 S. C. 312; 98 S. C. 289; 48 S. C. 148; 86 S. C. 461.  *Remarks of Court in ruling on objection to testimony:* 61 S. C. 17; 73 S. C. 383.  *Opinion evidence as to possession:* 36 S. C. 479; 59 S. C. 311; 68 S. C. 421.  *Action essentially involved title:* 42 S. C. 148.  *Forty years' possession:* Code Civil Proc., sec. 134; 14 Stats. 445, secs. 98 and 99; 59 S. C. 440.  *Ten years' possession:* 30 S. C. 291.  *Burden of proving title on plaintiff:* 42 S. C. 148; 60 S. C. 559.  *Charge as to possession of uncultivatable lands:* 95 S. C. 245; 26 S. C. 219; 42 S. C. 148; 19 Am. Dec. 535; 30 L. R. A. 253.

July 1, 1916.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The trial put in issue some 40 acres of swamp land on Black River in Clarendon county. The plaintiffs allege that

they were in possession of the same; that the defendants were asserting a claim thereto; that such claim was a cloud on plaintiffs' title; and prayed an injunction against the defendants' trespasses. The defendants alleged that they were seized in fee of the land, and they denied the plaintiffs' ownership; that the plaintiffs had not been seized and possessed for 10 years next before action, but that defendants had occupied the land for 10 years before action, continuously and adversely, and they pleaded the 10-year statute as a bar to the action; that the defendants had occupied the land openly and adversely for 20 years before action; that the defendants had been in hostile and continuous possession for 40 years before action. The Court by consent of the parties submitted the issue of title to a jury. The jury found "for the defendants." Then the Court by formal decree dissolved a former temporary injunction which had been granted pending trial, and adjudged that the defendant "is owner in fee simple of the premises described in the complaint," and the complaint was "dismissed." The plaintiffs have appealed, and have made 23 exceptions; but they have argued not half so many issues, and only 10.

We shall not advert to so many alleged errors, for there are not so many real issues in the case. We shall endeavor to compass all the real issues. Two issues have reference to the competency of testimony; all others refer to the Court's charge.

1. The defendant, Julia D. Epps, had aforetime executed to one Thorne a mortgage on the disputed land; and she had also executed to Ingram and Harby an option on timber standing on the land. The defendant offered as evidence these acts of the defendant, and the Court allowed the testimony. We think the testimony was competent. It is true that a party to a land suit may not prove in aid of the title the party's own declarations in favor of his title, except where the other party has first proved that party's declarations hostile to his title. In such

case the favorable declarations of the party may be proved to rebut those first made hostile to title. *Ellen* v. *Ellen,* 16 S. C. 135. But a party who rests his title on adverse and continuous possession may always put in evidence his acts upon the land. They are circumstances from which a jury may find out the character of the occupancy. If the party cut timber, plowed the fields, paid the taxes, built houses, these acts may be proven to show the character of the occupancy. Of the same character is the act of executing a mortgage on, or giving an option upon, the land. It is true that the simple act of executing a mortgage may not be competent to prove that thereby the party proves a circumstance of ownership; but if there be other testimony of actual occupancy, the mortgage may be proved as an act to show the character of the occupancy. It is plain that if John shall execute a deed upon land, and no more appears, such act on his part is not evidence of his ownership; but if John first cut timber, plowed, built houses, etc., then proof that he also made a deed of the land is evidence to show why he did the other acts. The appellant admits so much in the printed brief. In the instant case there was testimony tending to prove that the defendant cut timber many times on the disputed lands, and did other acts incident to possession and ownership. The mortgage and option were therefore competent testimony.

2. The witness, Haynesworth, was called by the plaintiff in reply, and he was asked this question:

2    "Mr. Haynesworth, who has been in possession of this disputed land all the time that you have known it?"

The Court ruled:

"He can tell the acts of ownership exercised over it; but possession is a conclusion. The jury draw that."

The Court was right. Possession is a broad question; it exists when those circumstances upon which it depends

have been shown. Holmes in his Common Law, page 214, has made a luminous statement of the case. He says:

"The word 'possession' denotes a group of facts. Hence when we say of a man that he has possession, we affirm directly that all the facts of a certain group are true of him, and we convey indirectly or by implication that the law will give him the advantage of the situation."

The facts which denote possession must be proven, and when that is done, then possession exists.

3. The appellants' counsel said at bar:

"The major error in the whole case is the treatment of the plaintiffs' case as an action to recover land, when it was only for injunction."

It is true the plaintiffs alleged they were in possession, that the defendants were committing acts of trespass, and prayed injunction. But the defendants denied that, and claimed title in themselves. They had that plain right. The issue to be tried is made by all the pleadings, and the pleadings put the title in issue. At the suggestion of the plaintiffs' attorney the Court instructed the jury to find "for the plaintiffs," or "for the defendants," and the jury found the latter verdict. The pleadings and the testimony made it the duty of the Court to submit to the jury who had the best right to the particular 40 acres of swamp land.

4. Conceding that there was a real issue betwixt the parties of right to occupancy of the 40 acres, the next inquiry of serious import is, was the jury rightly instructed thereabout? Both sides put in evidence color of title. The plaintiffs proved a grant to Phineas Spry, dated in 1736, and by successive conveyances down to the plaintiffs. The defendants started with a deed by Witherspoon to Epps, dated January 14, 1836, and on down to the defendants. There is no dispute but that the parties own adjoining lands; the defendants admit that the plaintiffs own the land on the south side of Martin's Lake, but the defendants claim to own that on the north side of Mar-

tin's Lake. Martin's Lake is described as part of the main run of Black River. The 40 acres in dispute lie north of Black River; that is north of Martin's Lake. The issue was, under which paper title did the 40 acres lie? The appellants, however, insist that it was error for the Court to "put plaintiffs' title and defendants' title on the same footing," when the Court advised the jury to inquire which paper title covered the disputed land. The parties do not claim from a common source of title. The defendants' paper title, starting in 1836, is as effective if it does cover the 40 acres, as is the plaintiffs', which started a century before. Two surveyors testified very briefly, one on each side. They fixed no corner, no natural or artificial mark, and no course and distance, and neither of them undertook to say definitely which paper title covered the 40 acres. The real issue in the case was that raised by the defendants' plea of 10 and 20 years' adverse possession of the disputed parcel of land. When the plaintiffs established a legal title to the premises, as they did, the presumption followed that they were possessed of the same within the time required by law. Code Civ. Proc., sec. 126. When the occupants, the plaintiffs, showed, as they did, that they entered possession of a parcel of land under claim of title, upon a written instrument, and there has been a continued occupation of the premises included in the instrument, or of some part thereof, for 10 years, the holding shall be deemed adverse. Code Civ. Proc., sec. 127. To overcome these statutory presumptions the defendants must show that they have actually occupied and possessed adversely the premises for 10 years before action commenced. Code Civ. Proc., sec. 126. That indeed is the defendants' plea, a 10-year and a 20-year adverse holding of the 40 acres by them before the plaintiffs sued. The Court in its own language charged plainly and correctly the law which makes 10 years' adverse holding a bar to an action. But leaving that, the Court immediately charged :

"Another rule of law is that if a person is in possession of land for 20 years, it is presumed that they got that land from the State. A grant would be presumed."

But plainly 20 years' possession will not confer title on the occupant unless it be adverse. *Smith* v. *Asbell,* 33 S. C. L. (2 Strob.) 141. Standing by itself, this general charge of the Court was not a correct statement of the law. The defendants, however, proffered 14 requests to charge, and some of the requests which were allowed are inconsistent with the general charge of the Court.

The seventh allowed request admits entirely the vital question of adverse possession. The next request, the eighth, is inconsistent with the seventh, but it was allowed. The tenth request, which was allowed, embodies the element of adverseness in a 20-year possession; and the Court had aforetime, in the general charge, omitted that element. The plaintiffs' request was a correct statement of the law. It was allowed, but the force of it was destroyed by contrary instructions. We are of the opinion that there was no chance for the jury to follow to a right end a path with so many digressions; and for that reason there ought to be a new trial.

5. The decree entered by the Court undertook to order that the defendants were the owners in fee simple of the land in issue. The jury did not so find; the verdict was "for the defendants." The utmost the Court could do was to deny the injunction sued for; it did that, but did not stop there.

The verdict below is set aside, and a new trial is ordered.