15626

STEIN v. XEPAPAS

(29 S. E. (2d), 257)

July, 1943.

*Mr. John W. Scholenberger* and *Mr. Gary Paschal,* both of Columbia, S. C., Counsel for Appellant,

*Messrs. Melton & Belser,* of Columbia, S. C., Counsel for Respondent,

February 28, 1944.

MR. ASSOCIATE JUSTICE STUKES delivered the Unanimous Opinion of the Court:

Unusually interesting facts are involved in this appeal, induced by effects of the present catastrophic World War. Defendant was a former resident of the City of Columbia, a Greek National. He owned valuable Main Street property there which had been in the charge of his real estate agent, Mr. Walter T. Love, trading as Walter T. Love & Company, for several years. In Columbia last during the latter part of the year 1939 defendant asked Mr. Love to negotiate a sale, meanwhile having given him a written contract for the collection of rentals, care and preservation of the property, etc., which was supplemented by verbal authorizations. It was advertised for sale and by that means and personal solicitation by Mr. Love, plaintiff became interested in the purchase and made an offer of $52,000.00, on certain part cash and part secured credit terms. The offer was incorporated in the form of a contract which plaintiff executed under direction of Mr. Love to whom he gave his check for $1,000.00 as earnest money and the contract was mailed to the defendant, Mr. Love retaining, but not depositing or cashing, the check which was payable to him as agent.

Thereafter, on the same day, which was March 30, 1940, upon plaintiff's request Mr. Love cabled the substance of the offer to his principal, the defendant, who had then returned to his historic former home city of Sparta. Reply by cable came promptly, about two days afterward, in the following form, "No less and sixty thousand dollars," which all parties and their attorneys agree was meant to be "no less *than* sixty thousand dollars."

Mr. Love immediately showed the cablegram to plaintiff and their ensuing conversation was in dispute between them in their testimony, resolved against the plaintiff by the Master and the trial Judge. Mr. Love testified that in a telephone conversation a day or so later plaintiff stated to him that he was calling his offer off and requested the return of his earnest money check and the proposed contract which had been signed by him. In contradiction, plaintiff's testimony was to the effect that he told Mr. Love that $60,000.00 was too much but that he would pay his proposed $52,000-.00, and in the event that the contract was returned signed by Xepapas he (plaintiff) would gladly comply. The check was at once returned by Mr. Love by personal delivery at plaintiff's store and in his absence it was left with his wife, who was there, which is corroboration of Mr. Love's version of the transaction. The check was produced in evidence by plaintiff, who said that his wife overlooked calling it to his attention promptly but did so a few days after it had been left by Mr. Love with her for him.

The conflict in the evidence just mentioned was found by the Master in favor of the defendant, as stated, and was fully confirmed by decree of the trial Judge, which will be later adverted to again.

Afterward the proposed contract, apparently duly executed by Mr. Xepapas in Greece, was received by Mr. Love with an accompanying letter in Greek, as to the translation of which in evidence there is no question in argument, but it is noted that the final word in the next to the last para-

graph is "statement" in the copy incorporated in the report of referee and the decree, but in the printing of the exhibits at the end of the transcript the word appears "agreement." However, this little discrepancy is not important in the controversy, as will be seen, and no exception relates to it. The letter is here reproduced in full from the decree, from which this appeal was taken, with emphasis added by the trial Judge for the purpose of his consideration:

"Dear Sir:

"Your telegram also your letter was received and both caused me sorrow by telling me of *selling* the building as at the present time owing to war conditions money are useless and real estate is gold *but as long as you wish it to be that way there isn't anything I can do or say at the present.* Let it be as it is. Now I am going to ask you to please deposit the money in the open account, the money you will receive from Mr. Stein, at the First National Bank of Columbia, also the forty thousand bond to be deposited at the same Bank for collection. Please tell the Bank as soon as each payment is collected to let me know so I can draw the money as needed.

*"Mr. Love, if it is possible that sale should not take effect will be that much better for me* (as long as there is no loss to us.)

"Enclosed you will receive a signed statement.

*"And again will ask you if it is possible for the building not to be sold.*

"Yours truly,

"N. J. Xepapas.

"P. S.: Mr. Interpreter please tell Mr. Love I have forgotten how to write English but I can read it as yet."

After consulting counsel, Mr. Love struck the signature of Mr. Xepapas from the purported contract and across the face of it wrote the words: "Void, Cancelled and not delivered." In that mutilated condition the paper was returned to plaintiff who several months there-

after brought this suit for specific performance. The summons was not personally served upon the defendant and the publication of it was deficient, not being in compliance with the governing sections of the 1942 Code, Nos. 436 and 8900. However, answer was interposed in behalf of the defendant by Mr. Love as his agent and was verified by him in accordance with the statutory law, Code, Sec. 475. Contest was made by plaintiff of Mr. Love's authority in the premises but there were concurrent findings against him upon the point by the Master and the trial Judge and no exception of appellant further raises the question, so it need not be considered. It is interesting in this connection to observe the dilemma faced by appellant. Apparently admittedly (certainly it was not contested), publication of the summons against the absent defendant did not comply with the statutes so there was no service thereby, and unless Mr. Love's appearance by answer for the defendant gave the Court jurisdiction, there was no jurisdiction. It was a true dilemma for neither horn of it afforded comfort to appellant's contentions. This anticipates unfavorable answer to his first question in the statement of "questions involved" in appellant's brief before this Court.

The Master continued the reference before him from time to time to allow opportunity for counsel to communicate with Mr. Xepapas but the ensuing wars "excommunicated" him from this country. First there was the unprovoked invasion of Greece by armies of the Italian Duce (now happily, deposed and discredited) in October, 1940, and upon their faltering in 1941 came the barbarous but more efficient and successful Germans, and now Greece is enemy territory, that is, territory occupied by the enemy.

Unimportant in the contest, but interesting, is the fact that plaintiff sought the assistance of defendant's cousin in Columbia, one Kanellos, who wrote Mr. Xepapas in an apparent effort to persuade him to accept plaintiff's offer for the property and enclosed a proposed deed for his execution

and he received a reply from defendant rebuking him for his gratuitous intervention, by letter dated August 14, 1940, and politely asking him, in effect, to stay out of the transaction. On the same date, long before the commencement of this action in the following December, defendant mailed the deed unsigned to Mr. Love.

Those just mentioned were the last communications from Xepapas, although his agent, Mr. Love, diligently and persistently continued after the suit was started to try to reach him by mail and cable. Registered letters were returned by the German censor and the cable companies reported their inability to deliver messages to Greece. So, after delays reasonable under the circumstances, the references were closed.

In a comprehensive and well-reasoned report the Master sustained all of the major contentions of defendant and recommended dismissal of the complaint and the cancellation of the record of the purported contract which plaintiff had caused to be recorded in the Clerk's office. Several sufficient reasons were given for his conclusions: First, that defendant's cablegram referring to $60,000.00 was a rejection of plaintiff's offer of $52,000.00 and a counter-offer to sell for $60,000.00; that plaintiff thereupon expressly withdrew his offer; that the subsequent execution by defendant of the purported contact was under mistaken impression that he was obligated by Mr. Love to sell at the lower figure, plainly shown by his letter of transmittal; that the agent, Love, was authorized to, and properly did, cancel the purported contract before delivering it to plaintiff, and was likewise authorized to appear and defend the action in defendant's behalf; but he found it unnecessary to pass upon the further position of defendant that it would be inequitable, under all of the circumstances disclosed by the evidence, to enforce specific performance against defendant, cut off as he is from all communication by the exigencies of war.

There were numerous exceptions by plaintiff to the referee's report and they came on to be heard by his Honor,

Judge Mann, who rendered an able decree confirming the report in all respects and added as reasons for 'dismissal of the complaint the inequity of the enforcement of the purported contract under the changed conditions resulting from war and the resulting enforced absence of defendant, even his utter silence in the controversy, falling back upon the ancient doctrine that specific performance is not a matter of right, but rests in the sound discretion of the Court; and he also cited the Executive Order of the United States, No. 8389, regulating "trade with the enemy," 12 U. S. C. A., § 95, note and the annotation in 143 A. L. R., 1507.

However, we think these latter considerations unnecessary, for we fully· agree with and affirm the concurrent findings of the referee and the trial Judge that plaintiff's offer of purchase was terminated by defendant's counter proposal, his cablegram, further buttressed by plaintiff's express withdrawal of his former offer, upon declining to Mr. Love to accept the counter offer of $60,000. Patently, there was no meeting of the minds which is fundamentally necessary for the formation of a contract. It is a fixed rule that this Court will not disturb concurrent factual findings of the Master and trial Judge in an equity case unless such findings are without evidence to support them or are against the clear preponderance of the evidence, *Alderman v. Alderman,* 178 S. C., 9, 181 S. E., 897, 105 A. L. R., 102. Clearly, this case does not come within the stated exceptions to the rule.

Appellant has stated the issues in this Court as four in number. The impropriety of the first (which he has called "an agent's power to enter into' litigation") for lack of a pertinent exception has already been sufficiently alluded to. We think the decision of appellant's second question, likewise already indicated above, is controlling of the case. This he states as follows: "That the Master committed error in finding and concluding that the appellant had withdrawn his offer to purchase the property." This assignment of al-

leged error overlooks the confirmation by the trial Court of this factual finding by the Master which we affirm in accord with the usual rule applicable to concurrent findings, set forth above.

This necessary disposition of plaintiff's second of his "questions involved", just stated, renders unnecessary discussion and decision of his third and fourth questions, which relate to the power of an agent to rescind a contract, and whether, on the whole case presented, specific performance should be decreed in view of the discretionary power of a Court of Equity thereabout.

The exceptions are overruled and the judgment appealed from is affirmed.

MR. CHIEF JUSTICE BAKER, MR. ASSOCIATE JUSTICE FISHBURNE, and CIRCUIT JUDGES E. C. DENNIS and E. H. HENDERSON, ACTING ASSOCIATE JUSTICES, concur.