0635

Janie J. GRANT, Julia G. Thomas, Joseph Grant, Moses Grant, Margaret G. White, Annie B. Smalls, Laura M. Grant, Genevieve G. Gershin, James Grant, Jr., and Rosa L. Grant, in their capacity as successors to the interest of James Grant, deceased, Appellants v. Abraham GRANT, the heirs of Abraham Grant, Peggie Grant, the heirs of Peggy Grant; Janie Grant, the heirs of Janie Grant; Patsie Murray, the heirs of Patsie Murray; Edward M. Murray, the heirs of Edward M. Murray; Diana Singleton, the heirs of Diana Singleton; David Grant, the heirs of David Grant; Sara Christopher, the heirs of Sara Christopher; Beulah Kelson, the heirs of Beulah Kelson; Viola Chisholm, the heirs of Viola Chisholm; Blossom Grant, the heirs of Blossom Grant; Bell Williams, a/k/a Bell Williams Grant, the heirs of Bell Williams, a/k/a Bell Williams Grant; Julia Thomas, the heirs of Julia Thomas; Moses Grant, the heirs of Moses Grant; Joseph Grant, the heirs of Joseph Grant; Margaret White, the heirs of Margaret White; Annabel Smalls, the heirs of Annabel Smalls; Harold Smalls, the heirs of Harold Smalls; Laura Grant, the heirs of Laura Grant; Genevieve Grant, the heirs of Genevieve Grant; James Grant, Jr., the heirs of James Grant, Jr.; Rosa Lee Grant, the heirs of Rosa Lee Grant; Abraham Grant #2, the heirs of Abraham Grant #2; Hatie Green, the heirs of Hatie Green; Sadie G. White, the heirs of Sadie G. White; Naaman Singleton, the heirs of Naaman Singleton; Esekiel Singleton, the heirs of Esekiel Singleton; Simon Singleton, the heirs of Simon Singleton; Julia Singleton, the heirs of Julia Singleton; Bluer Singleton, the heirs of Bluer Singleton; Bankers Trust of South Carolina; Palmetto Electric Cooperative, Inc.; the heirs and assigns of anyone listed in particular and all other parties known or unknown claiming any right, title or interest to the property described in the Complaint herein being collectively designed as John Doe and Mary Doe, all heirs, distributees or devisees of any unknown defendants who may be now deceased and including all minors, in the Armed Services, insane persons whomsoever who might have a claim of any right, title or interest in the property described in the Complaint herein, Defendants, of whom Sadie G. White is Respondent.

(340 S. E. (2d) 791)

Court of Appeals

*Arthur G. McFarland* of *McFarland & Jenkins*, Charleston, *for appellants.*

*James M. Herring* and *Curtis L. Coltrane* both of *Herring & Meyer*, Hilton Head Island, *for respondents.*

Heard Dec. 17, 1985.

Decided Feb. 14, 1986.

CURETON, Judge:

This action to quiet title to real property was instituted on October 4, 1979 by James Grant whose position is represented by the appellants, his heirs-at-law (the Grants). James Grant claimed title to the realty once owned by his brother, Abraham Grant, under three theories. Only his adverse possession claim is before us on appeal. The respondent, Sadie Mae Grant White, is Abraham Grant's daughter and James Grant's niece. The jury rendered a verdict in favor of Mrs. White. We affirm.

The disputed land is located on Hilton Head Island fronting on South Carolina Highway 278 and is bordered by Janie Grant's (Mrs. James Grant's) home and a convenience store. Abraham Grant allowed his brother to cultivate the land prior to his death in 1963. In April 1966 Mrs. White filed a summons and petition with the Probate Court of Beaufort County against James Grant to determine her rights in the land as Abraham Grant's sole heir. Because of her uncle's promises to settle with her, she did not pursue the litigation.

On January 27, 1964 James Grant was made the administrator of Abraham Grant's estate and served in this capacity until his death on December 1, 1979. Between 1965 and 1980 taxes on the land were paid in the name of the heirs of Abraham Grant. In 1977 James Grant executed a mortgate covering adjacent land representing that the subject land was owned by the heirs of Abraham Grant.

James Grant instituted this action by serving all of the parties to this action by publication even though he lived with some of them and others lived only a short distance from his home. Subsequently, the circuit court entered a default judgment. In August 1981 Mrs. White filed a petition to reopen the judgment. In March 1983 the circuit court entered an order reopening the case and allowing Mrs. White to advance her claim to the property. Mrs. White, thereafter, filed an answer and a counterclaim wherein she sought title to the land as Abraham Grant's sole heir.

At an August 30, 1983 roster meeting, this matter was set for trial on September 19, 1983. For reasons not appearing in the record, the Grants dismissed their attorney on September 10, 1983 even though he had advised them that their case was the first set for trial on September 19, and that if they could not retain another attorney, they needed to be prepared to proceed *pro se*. On September 13, 1983 the Grants retained new counsel and turned over a well-prepared case file to him.

On the morning of September 19, 1983 the court allowed the Grants' former counsel to be relieved as attorney of record. On that date the Grants' new counsel moved for a continuance so that he could interview witnesses. The judge denied this motion because the case dating back to 1979 needed to be resolved and because several cases were set to be heard during that term for a day certain. However, the court agreed to grant the continuance if opposing counsels agreed and if another case could be tried in the time allotted for this case. Mrs. White's counsel would not agree to a continuance because his out of town witnesses were already in the court.

In the afternoon of September 19, when this case was called for trial, the Grants moved for a voluntary nonsuit,

thereby electing to proceed on Mrs. White's reply and counterclaim and their answer. The motion was granted and the Grants did not call any witnesses during the trial.

The Grants raise three issues on appeal: one, whether the trial judge's denial of the motion for a continuance amounted to an abuse of discretion; two, whether the trial court erred in admitting a survey into evidence; and three, whether the trial court erred in striking the Grants' adverse possession defense.

## I.

The Grants assert that the trial judge abused his discretion by not giving due "consideration to the nature of the rights and public interest involved and to the effect of the delay on the exercise of such rights in the protection of the public interest." We disagree.

Motions for continuance are addressed to the sound discretion of the trial judge and his ruling will not be reversed on appeal absent an abuse of discretion. *Newman v. Old West Inc.*, 286 S. C. 394, 334 S. E. (2d) 275, 276 (1985). "Whether a judge does or does not abuse his discretion depends upon the facts before him at the time." *Purex Corp. v. Walker*, 278 S. C. 388, 390, 296 S. E. (2d) 868, 869 (1982). Our review of the facts convinces us that the trial judge did not abuse his discretion in denying the Grants' request for a continuance. Moreover, the Grants' present counsel concedes that the case file was fairly well prepared when he received it and that he sought a continuance primarily to interview witnesses. There is nothing in the record to explain why these witnesses were not interviewed or could not have been interviewed during the six day period following his employment.

## II.

The Grants next argue that the trial judge abused his discretion by admitting a survey into evidence "because the survey purported to be a field survey but in fact was not representative of any field research." When Mrs. White offered the survey into evidence the Grants objected to the survey on the ground that counsel wanted to cross-examination the witness about the survey before its

admission. The trial judge admitted the survey into evidence and advised counsel that he could cross-examine the witness thereafter about the survey. When counsel's opportunity for cross-examination arose, he merely stated, "Reserving my objection." He did not state the specific grounds for the objection which he now seeks to present on appeal. An issue not raised in the lower court cannot be presented for the first time on appeal. *Cudd v. John Hancock Mutual Life Insurance Co.*, 279 S. C. 623, 629, 310 S. E. (2d) 830, 883 (Ct. App. 1983). We also note that no motion was made to strike the survey as evidence. *Bradley v. Fowler*, 210 S. C. 231, 242, 42 S. E. (2d) 234, 239 (1947) (defendant could not object on appeal to admission of witness' testimony though cross-examination was made subject to objection, where no motion was made to strike it out).

### III.

The Grants also argue that the trial judge erred in striking their defense of adverse possession. The trial judge explained his decision by stating that there was no evidence of ouster by James Grant of Abraham Grant and his successors-in-interest. We agree.

In order to acquire title to the land, the Grants had the burden of proving that James Grant's possession was hostile by clear and convincing evidence. *Compare Zinnerman v. Williams*, 211 S. C. 382, 386, 45 S. E. (2d) 597, 599 (1947); *Lusk v. Callaham*, 339 S. E. (2d) 156 (S. C. Ct. App. 1986) *with Knight v. Hilton*, 224 S. C. 452, 456, 79 S. E. (2d) 871, 873 (1954) (adverse possession must be proved by a clear preponderance of the evidence). They also had to prove that he asserted a claim adverse to the heirs of Abraham Grant. *Weston v. Morgan*, 162 S. E. 177, 205-06, 160 S. E. 436, 446 (1929) ("where one's possession was begun in privity with or *in subservience to the title of another*, a quasi fiduciary relation is established, and, before the foundation can be had for ... the defense of adverse possession by the acquisition of an outstanding title, a clear, positive, and continued disclaimer of the title under which he entered and the assertion of an adverse claim must be brought home to the other party. Until the trust is openly repudiated, the cestui que trust may rely upon the integrity of the trustee without

endangering his right by lapse of time.") (emphasis added).

Here, the Grants offered no evidence at trial to establish an ouster[1] or to show that their possession was hostile. Prior to Abraham Grant's death, James had permission to farm the land. Thereafter, his possession was not hostile vis-a-vis the heirs because he held it as the administrator of Abraham Grant's estate. *See Ramsey v. Deas,* 2 S. C. Eq. (2 Des.) 233 (1804) (an executor occupying the lands of his testator is considered to be holding them in trust for his heirs, unless he proves that he held adversely with notice to the heirs).

Having found no error, the judgment below is

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.

---

[1] "Ouster is defined as the actual turning out or keeping excluded a party entitled to possession of any real property." *Weston v. Morgan,* 162 S. C. 177, 193, 160 S. E. 436, 442 (1929).