1019

John M. BUTLER, Respondent-Appellant v. W. M. LINDSEY, Appellant-Respondent.

(361 S. E. (2d) 621)

Court of Appeals

*Donald J. Budman*, of *Solomon, Kahn, Smith & Baumil*, Charleston, *for appellant-respondent.*

*Lon H. Shull, III*, of *Rosen, Rosen and Hagood*, North Charleston, *for respondent-appellant.*

Heard June 15, 1987.

Decided Sept. 8, 1987.

CURETON, Judge:

In December 1985, Butler sued Lindsey for trespass claiming Lindsey was using his property without permission. Lindsey answered and counterclaimed alleging he held legal title, or alternatively, he owned the property by adverse possession. He also counterclaimed for the value of improvements made by him to the property should the court decide he did not own it. Butler's reply to Lindsey's counterclaim prays that the "Court issue its order quieting title as between these litigants." The case was referred to the master with authority to enter a final order. The Master concluded Lindsey had trespassed on Butler's property and awarded Butler damages of $900.00. The master also ruled that Butler should compensate Lindsey $4,500.00 for improvements made to the property. Lindsey appeals the master's holdings that he did not own the property; that Butler's trespass action was not barred by the Statute of Limitations; that the value of the improvements was only $4,500.00; and that Butler was entitled to an award of nominal damages of $900.00. Butler appeals Lindsey's entitlement to compensation for the improvements and the amount of compensation. We affirm as modified.

Butler and Lindsey are adjoining landowners. The property in dispute is a one acre peninsula-shaped tract of land located on Yonges Island in Charleston County. The parcel was at one time part of a larger tract owned by D. H. Towle who in 1904 conveyed the tract to W. H. Cox and H. H. Butler. These parties subsequently partitioned the property with H. H. Butler purportedly receiving title to the disputed parcel. In 1946, H. H. Butler, the respondent's father, conveyed part of his land containing 141 acres to Butler which

according to early plats contained the disputed property. The confusion began in 1946 when a plat was prepared which arguably included the disputed parcel within the parameters of the tract owned by Cox's successor in title. Plats made subsequent to 1946 definitely included the disputed parcel within the land owned by Cox's successors in title. In 1964, H. P. Riser, successor to Cox's title, conveyed to Lindsey a parcel of land referring to a 1955 plat which showed the disputed parcel as part of the land conveyed to Lindsey. There is no evidence that Butler or his father ever deeded the disputed property to Lindsey or his predecessors in title.

We are unable to determine whether Butler's action was tried as one for trespass quare clausum fregit or trespass to try title. Regardless, a trespass action is an action at law, as in an action in the nature of trespass to try title. *Uxbridge Co. v. Poppenheim*, 135 S. C. 26, 133 S. E. 461 (1926), *Corley v. Looper*, 287 S. C. 618, 340 S. E. (2d) 556 (Ct. App. 1986). Likewise an adverse possession suit is an action at law. *Lynch v. Lynch*, 236 S. C. 612, 115 S. E. (2d) 301 (1960).

Although Lindsey argues error in the failure of the master to find that he holds legal title to the disputed parcel, our review of the record indicates substantial evidence to support the master's ruling. His claim is manifestly without merit and we dispose of it under provisions of Section 14-8-250, Code of Laws of South Carolina, 1976.

## ADVERSE POSSESSION

The master concluded that Lindsey had not "adversely possessed the land in that he [had] not occupied the land exclusively [and] openly for ten (10) years or more." We find evidence in the record to support this conclusion especially as it relates to the exclusivity of Lindsey's possession. Moreover, Lindsey did not except to the finding regarding exclusivity; his exceptions address only the finding that he had not openly occupied the land. Where there is no exception to a trial court's finding of fact, the finding is conclusive on appeal. *Stein v. Xepapas*, 204 S. C. 239, 29 S. E. (2d) 257 (1944). We also note that the majority of Lindsey's exceptions are so general that they do not comply with Supreme Court Rule 4, Section 6, which requires each exception to contain a concise statement of law

or fact and to contain a complete assignment of error. Despite these technical violations, we will address the merits of the issue.

A party claiming title by adverse possession must show the extent of his possession. *Weston v. Morgan*, 162 S. C. 177, 160 S. E. 436 (1931). While color of title draws the constructive possession of the whole premises to the actual possession of a part only, and is evidence of the extent of the possession claimed, it is not of itself evidence of adverse possession, and it does not follow that adverse possession can be proved by less evidence when the entry is under color of title than when it is not. 3 Am. Jur. (2d) *Adverse Possession* Section 145 (1986); *see, Graniteville Co. v. Williams*, 209 S. C. 112, 39 S. E. (2d) 202 (1946) (The only office of color of title is to define the extent of the claim and to extend the possession beyond the actual occupancy to the whole property described in the instrument).

Possession is presumed to follow the legal title to land. *Knight v. Hilton*, 224 S. C. 452, 79 S. E. (2d) 871 (1954); *Lyles v. Fellers*, 138 S. C. 31, 136 S. E. 13 (1926). The mere possession of land does not in and of itself show hostility to the owner. "Indeed, there is every presumption that such an occupancy is in subordination to the legal title." *Knight v. Hilton*, 224 S. C. at 456, 79 S. E. (2d) at 873. In order for Lindsey to maintain the instant action, he must rebut Butler's presumption of possession by proof of adverse possession [*Love v. Turner*, 71 S. C. 322, 51 S. E. 101 (1905)] and such proof must be by clear and convincing evidence. *Zinnerman v. Williams*, 211 S. C. 382, 45 S. E. (2d) 597 (1947); *Thomas v. Dempsey*, 53 S. C. 216, 31 S. E. 231 (1898); *Grant v. Grant*, 288 S. C. 86, 340 S. E. (2d) 791 (Ct. App. 1986); *Lusk v. Callaham*, 287 S. C. 459, 339 S. E. (2d) 156 (Ct. App. 1986).

Adverse possession is an affirmative defense; *Weston v. Morgan*, 162 S. C. 177, 160 S. E. 436 (1931). The burden of proof of adverse possession is on the one relying thereon. 162 S. C. at 192, 160 S. E. 436. To constitute adverse possession, the possession must be actual, open, notorious, hostile, continuous, and *exclusive* for the entire statutory period. *Mullis v. Winchester*, 237 S. C. 487, 118 S. E. (2d) 61 (1961); *Gregg v. Moore*, 226 S. C. 366, 85 S. E. (2d) 279 (1954); *Lusk v. Callaham, supra; Croft v. Sanders*, 283 S. C. 507, 323 S. E. (2d) 791 (Ct. App. 1984).

Because an adverse possession claim is an action at law, the character of the possession is a question for the jury or fact finder, in this case, the master. *Lynch v. Lynch, supra; Lyles v. Fellers, supra; Stokes v. Murray*, 95 S. C. 120, 78 S. E. 741 (1913); *Abel v. Hutto*, 42 S. C. L. (8 Rich) 42 (1854). Only where the evidence as to adverse possession is susceptible of but one inference does the question become one of law for the court. *Mullis v. Winchester, supra; Atlantic Coast Line Ry. Co. v. Searson*, 137 S. C. 468, 135 S. E. 567 (1926). Therefore, our review of the facts is limited to a determination of whether there is any evidence reasonably tending to support the master's findings. *Knight v. Hilton, supra; Lusk v. Callaham, supra.*

Butler and his son testified that they had always used the land several times a year to hunt and continued to use it for that purpose up until the time of trial. There is no question that the land is suited only for recreational purposes such as hunting or boat docking, since it is too low for residential building. Acts of ownership of open land need only be exercised in a way consistent with the use to which the land may be put and which the situation of the property permits without actual residency or occupancy. *Mullis v. Winchester, supra.* Lindsey testified that prior to building the dock in 1977, he left his boats there at low tide and allowed his children to camp out there on weekends. The only evidence in the record of any improvements on the land by Lindsey date from 1977-1978, when a dock, boat landing, and fence were constructed. Lindsey testified that around 1966 he laid small culverts in a slough or marsh area located between the disputed property and property on which he had placed a trailer in the 1960's. He testified he did this so he could drive his tractor across the slough onto the disputed property. However, there is no evidence he then made any improvements to the disputed parcel. Lindsey testified:

Q. Prior to 1974, had you done anything to improve the land?

A. Yes, sir. In 1966 ... wait a bit. Yes, we put some small culverts in that slough down there, so that we could drive the tractor across it.

Furthermore, although Lindsey quotes testimony of Butler in his brief which implies Butler's acknowledgement

of Lindsey's occupation of the disputed tract at the time of the May 8, 1975 letter from Butler's attorney to Lindsey, the quote, when placed in proper context along with all of the other evidence in the record, shows no actual occupation by Lindsey until 1977, and within ten years of the commencement of this action. Thus, the record reveals both parties used the property for recreational purposes throughout the ten year period that Lindsey claims to have acquired title by adverse possession.

The general rule is that where an owner of property and an occupier are both in possession, the possession of the legal owner prevails to the exclusion of the other. *Middleton v. Dupuis*, 11 S.C.L. (2 Nott & McC.) 310 (1820). The exclusive possession necessary to acquire title by adverse possession is not satisfied if occupancy is shared with the owner or with agents of the owner. *Farella v. Rumney*, 649 P. (2d) 185 (Wyo. 1982); 3 Am. Jur. (2d) *Adverse Possession* Section 78 (1986).

In this case, because there is evidence that Butler continued in possession of the land to which he held record title, Lindsey's acts of possession cannot meet the necessary requirement of exclusive possession needed to establish his claim by adverse possession. Of course we have no power to weigh the evidence in this case. *The Hibernian Society v. Thomas*, 282 S. C. 465, 319 S. E. (2d) 339 (Ct. App. 1984). But, even if we were authorized to weigh it, we would nevertheless hold that Lindsey has not proven adverse possession by clear and convincing evidence. We, therefore, affirm the findings of the master on this issue.

## STATUTE OF LIMITATIONS

Lindsey argues Butler's trespass action is barred by the Statute of Limitations. The master held that because the trespass was a continuing one, the statute provided no bar. We agree. Although Section 15-3-530, establishes a six year limitations period in an action for trespass to real property, and the statute commences running at the occurrence of the first actual damages, where the trespass is a continuing one, "the landowner may at any time recover for injury to his land which occurred within the statutory period." *McCurley v. South Carolina State Highway Depart-*

*ment*, 256 S. C. 332, 335, 182 S. E. (2d) 299, 300 (1971), quoting *Hilton v. Duke Power Co.*, 254 F. (2d) 118 (4th Cir. 1958). Thus, the part of Butler's trespass claim as occurred during the six year limitation period is not barred by the Statute of Limitations.

Lindsey also argues that Butler's cause of action is barred by Section 15-3-340, Code of Laws of South Carolina, 1976 because "there is no evidence that Butler was seized or possessed of the premises in question within 10 years before the commencement of the action." Section 15-3-340 requires a plaintiff to be "seized or possessed of the premises ... within ten years before the commencement of" a trespass action. Lindsey implicitly argues that Butler's occasional use of the property for hunting purposes does not constitute possession. We reject this argument. Butler's occasional recreational use of the disputed parcel is consistent with the uses to which the property may be put. *Mullis v. Winchester, supra.* Furthermore, it has been noted as a universal truth that the law considers the title to the *locus in quo* draws with it constructive possession thereof. *Lane v. Mims*, 221 S. C. 236, 70 S. E. (2d) 244 (1952); *Lyles v. Fellers*, 138 S. C. 31, 136 S. E. 13 (1926); *Love v. Turner*, 71 S. C. 322, 51 S. E. 101 (1905).

## NOMINAL DAMAGES AWARD

Lindsey objects to the master's award of $900.00 "nominal damages" to Butler for trespass upon his land. The award is based on "one hundred ($100.00) dollars per year from 1977 forward [to 1986] amounting to nine hundred ($900.00) dollars." Lindsey argues that $900.00 represents substantial damages, not "nominal" damages, and were therefore erroneously awarded. He relies upon the case of *Hinson v. A. T. Sistare Construction Co.*, 236 S. C. 125, 113 S. E. (2d) 341 (1960), *overruled on other grounds, McCall v. Batson*, 285 S. C. 243, 329 S. E. (2d) 741 (1985), which held that an award of $200.00 in a trespass action constituted substantial damages. The facts in *Hinson* are clearly distinguishable from the facts in this case. *Hinson* involved trespass by a highway construction company on property which had been condemned by the Highway Department, during the time the condemnation award was under appeal.

The Supreme Court concluded that while the construction company had technically trespassed upon the land, Hinson sustained no damages because he had already been compensated in the condemnation award for the injuries he claimed to have sustained due to the trespass. Additionally, the trespass in *Hinson* was a single trespass, not a continuing trespass, as involved here. Moreover, unlike in *Hinson*, there is some evidence Butler sustained actual damages. He testified that the disputed parcel was not suited for a dock and he would have to remove the dock. Even if the master erroneously characterized the damages as nominal, such affords no basis for reversal, where, as here, there is some evidence of actual damages in the amount awarded. *JKT Co. Inc. v. Harwick*, 274 S. C. 413, 265 S. E. (2d) 510 (1980). (An error not found to be prejudicial does not constitute grounds for reversal.)

We do find nevertheless that in awarding damages of $100.00 per year for nine years, the trial judge awarded damages for years outside the six year limitations period. We therefore modify the award to $600.00.

## COMPENSATION FOR IMPROVEMENTS

In 1977, Lindsey built a dock on the disputed parcel and also provided the property with water and electricity. He testified the dock cost him $15,000.00, excluding the value of his personal labor.

Although Butler testified he intends to remove the dock, his expert witness testified the dock enhanced the value of the land in the range of from $3,000.00 to $6,000.00.

Lindsey pleaded the Betterment Act, Section 27-27-10 *et seq.* as the basis for recovery of the value of the improvements he made to the disputed parcel.[1] Butler argues that the improvements were made by Lindsey after he knew or should have known of Butler's ownership of the parcel. Section 27-27-70 permits a defendant to request by counterclaim the value of improvements made to the land where he believed "at the time he made the improvements or

---

[1] Butler does not argue that the Betterment Act is inapplicable to Lindsey's claim because Butler's claim is not one to recover possession of real estate. *See, C & S National Bank v. Modern Homes Construction Co.*, 248 S. C. 130, 149 S. E. (2d) 326 (1966).

betterments that his title thereto was good in fee." The question of whether Lindsey believed he had good title to the disputed parcel at the time he made improvements is a question of fact to be decided by the trial judge, not this court on appeal. *See,* 41 Am. Jur. (2d) *Improvements* Section 47 (1968). Moreover, there is a presumption that improvements made by one in possession under color of title were made bona fidely. 41 Am. Jur. (2d) *Improvements* Section 46 (1968). Because we find some evidence to sustain the trial judge's implicit finding that Lindsey believed his title to be good at the time he made the improvements, we affirm on this issue.

Finally, Butler argues the evidence does not sustain the award of $4,500.00 to Lindsey under the Betterment Act. In order to recover for the improvements, Lindsey must establish the increased value of the land in consequence of the improvements. *Dunham v. Davis,* 232 S. C. 175, 101 S. E. (2d) 278 (1957); Section 27-27-20, Code of Laws of South Carolina, 1976. A defendant's entitlement under the statute is established by showing the value of the land prior to the improvements, the value of the land after the improvements, and the amount the land increased in value because of the improvements. *Howard v. Kirton,* 144 S. C. 89, 142 S. E. 39 (1928). The record contains evidence to satisfy these requirements.[2]

Accordingly, the order of the trial judge is affirmed except to modify the damages awarded Butler from $900.00 to $600.00.

Affirmed as modified.

SHAW, J., concurring.

GARDNER, J., dissenting.

GARDNER, Judge (dissenting):

The majority opinion impacts seriously on the law of property of this state. The case deserves more than ordinary

---

[2] Butler seems to argue that the evidence on this point is limited only to the testimony of Lindsey of the monies spent to construct the improvements. He overlooks the fact that his own expert testified that the improvements had increased the value of the land in the range of from $3,000.00 to $6,000.00.

attention. I accordingly so address the issues in this dissent.

While Lindsey's exception relating to his motion for directed verdict does not fully comply with Supreme Court Rule 4, Section 6, this court has repeatedly held that if in examining an exception to discover whether it has been framed in violation of the rules, this court ascertains that it clearly embraces a meritorious assignment of prejudicial error, it ordinarily will waive the breach of the rules and consider the exception. This court is concerned with the substance of an appeal, not technical differences in the issues raised by the exceptions. *See Bartles v. Livingston*, 282 S. C. 448, 319 S. E. (2d) 707 (Ct. App. 1984). Moreover, contrary to the majority's emphasis on Lindsey's supposed failure to except to the finding concerning exclusivity, I submit that his exception to the denial of his motion for a directed verdict on the ground of adverse possession embraces the issue of exclusive possession.

Butler instituted this action on December 18, 1985, by alleging in his complaint that Lindsey, without his permission, entered upon the subject property, maintained a fence, and cleared the subject property and continues to use the property as his own and further:

> 4. That the actions of the Defendant as aforementioned have effectively prohibited the Plaintiff's enjoyment of that portion of the property and destroyed its usefulness to the Plaintiff.
>
> 5. That despite the protestations and demands of the Plaintiff, the Defendant has failed and refused to remove said fence and to allow Plaintiff access to the land though notified of his trespass upon said property.

Butler's complaint,[1] itself, negates the ruling of my brothers of the majority.

Lindsey by counterclaim alleged that he had acquired title to the subject property by adverse possession under claim of title.

The case was referred with finality to the Master-in-Equity. The appealed order held, *inter alia*, (1) that both

---

[1] Parties are judicially concluded and bound by their pleadings. *Elrod v. All*, 243 S. C. 425, 134 S. E. (2d) 410 (1964), cited in *Doe v. S. C. State Hospital*, 285 S. C. 183, 328 S. E. (2d) 652 (Ct. App. 1985).

parties had used the subject land for many years and that there was a dispute of ownership by the parties, (2) that the open use of the subject property by Lindsey did not commence until 1977 when Lindsey built a dock and made other improvements and therefore Lindsey's possession had not been for ten years and (3) that in 1977 there was a confrontation between the sons of the parties from which both parties learned or should have learned that the other party claimed ownership of the land. Based upon these findings of fact, the appealed order held, *inter alia*, that Lindsey had not acquired title by adverse possession under claim of title.

The majority opinion affirms the findings of the master. I strongly disagree.

My disagreement is epitomized by my belief that the thesis of the majority opinion is flawed; first, by the failure to concede that both Butler's complaint, by which he is bound, and his testimony establish and concede both entry and adverse possession accompanied by all of the elements of adverse possession of the subject property; second, that by May 1975, Butler knew of Lindsey's deed to the subject property, which constituted claim of title, and threatened to bring a trespass action if Butler continued to occupy the property; third, that after May 1975, there was no dispossession of Lindsey by Butler and no trespass or entry brought to Lindsey's attention except one hunting excursion by Butler's sons when they were in effect told to get off the property and therefore there was no interruption of Lindsey's exclusive possession of the property; and fourth, Butler did not bring the threatened trespass action until more than ten years after making the threat to do so. Lastly, my brothers fail to grasp the legal impact of actual notice to Butler of Lindsey's adverse occupancy of the subject property.

Lindsey made a timely motion for a directed verdict on the ground that he had acquired title by adverse possession under claim of title for more than ten years; the motion was overruled; the only issue pertinent to this dissent is the propriety of this ruling.

Butler and Lindsey are adjoining landowners. The subject property involves the tip of a peninsula-shaped piece of land; in the rendition below, the shaded area is the disputed property.

The subject property was once owned by D. H. Towles who conveyed it in 1904 to Cox and H. H. Butler (Butler's father), who later partitioned the land by an exchange of deeds.

H. H. Butler conveyed a tract of land allegedly containing the subject property to his wife, Sarah M. Butler, who, in turn, by deed dated May 28, 1949, conveyed the property to Butler referencing an unrecorded plat made by James Postell, surveyor, dated November 20, 1933. The following is a sketch of the pertinent part of this plat.

Lindsey's predecessors in title derived their title from Cox. On January 16, 1964, H. P. Riser, a successor to Cox's title, conveyed to Lindsey property described as lot No. 1 on a plat also made by James A. Postell, which plat was duly recorded

in the Office of the R.M.C., Charleston County, on February 23, 1957. Below is a sketch of the Postell plat referred to in the Lindsey deed.

The subject property is clearly within the property conveyed to Lindsey by Riser and no one disputes this. This constitutes Lindsey's "color of title."

Butler's attorney, Brockinton, on May 8, 1975, wrote Lindsey the following letter:

CERTIFIED MAIL—
RETURN RECEIPT REQUESTED
Mr. Wilbur M. Lindsey
1744 Pinckney Drive
Charleston, South Carolina 29407
Dear Sir:
As you know, we represent Mr. John M. Butler, the owner of a tract of land immediately east of your lot Number 1, which you acquired from H. P. Risher [sic] on or about the 11th day of January, 1964.
Since you and Mr. Butler conferred with the writer in our offices some weeks ago relating to the disputed property line between your respective properties, we have made a very careful study of the plats, both old and modern, of this property line and we have reached the conclusion that you are trespassing upon the property of Mr. Butler. Therefore, we must request that you cease and desist from any further trespass upon his property. Should you trespass any further upon Mr. Butler's property, after receipt of this letter, we shall be obliged to

take such appropriate legal action against you as may be necessary, in accordance with the instructions of our client; and we trust that the taking of such action will not become necessary.
Very truly yours,
BROCKINTON & BROCKINTON
BY: S/
D. A. Brockinton

Butler, himself, testified about Lindsey's conduct after the letter from Brockinton, as follows:

Q. And eventually you had a meeting with Mr. Lindsey and Mr. Brockinton down at Mr. Brockinton's office?
A. Yeah.
Q. About this piece of property?
A. Yeah.
Q. And there was some correspondence exchanged back and forth, but nothing really came of it?
A. No.
Q. And Mr. Lindsey stayed on the property?
A. Right.
Q. And he built a dock?
A. Right.
Q. And he built up the road?
A. Yes, he did.
Q. All of that is since the time that Mr. Brockinton wrote him that letter telling him that he was trespassing?
A. Right.
Q. And not only that, but Mr. Lindsey had made application to the Army Corps of Engineers and the South Carolina Coastal Council to build that dock?
A. And I had them check it too.
Q. And you protested that?
A. Yes.
Q. And they ultimately gave him a permit to build the dock?
A. Right.

It is my opinion that Butler's complaint and this testimony are conclusive as to adverse possession. It is to be remembered that Butler's action for trespass, which is the basis of this litigation, was instituted after the passage of ten and a half years.

Lindsey testified that immediately after the conference at Brockinton's office, he commissioned Sigma Engineers to survey the subject property; the Sigma Engineers' plat was recorded by Lindsey in the Office of the Registrar of Mesne Conveyances on November 6, 1975; the plat is of record and shows the disputed property to be Lindsey's property. Lindsey testified that soon after he purchased the property from Riser in 1966, he placed a mobile home on it and also installed a culvert under the slough indicated on the Postell drawing and began clearing part of the land. Lindsey also testified that he still has a mobile home on the subject property and that he paid taxes on the subject property and introduced tax receipts beginning in 1972. Lindsey also introduced the tax map for Charleston County which shows the subject property as belonging to Lindsey. Both Lindsey and Butler testified that there was a confrontation early in 1974 which resulted in the conference leading to Brockinton's letter to Lindsey of May 8, 1975.

Thereafter Lindsey replaced the culvert to permit crossing of the slough to the road he had built leading to the disputed land and Butler complained about this to the United States Coast Guard; there was an investigation which resulted in a letter from W. J. Brogdon, Jr., Commander, United States Coast Guard, Chief, Aids to Navigation Branch, 7th Coast Guard Division, dated August 24, 1976, which stated that since the 24-inch culvert replaced an existing smaller culvert (which was installed by Lindsey in the 1960's) to provide for greater erosion protection from drainage of upland areas, and the placement of fill for roadway repairs was above mean high water, with no material alteration to an existing roadway, the coast guard considered the work performed as routine maintenance to an existing causeway not requiring coast guard approval. A copy of this letter was sent to Mr. D. A. Brockinton, Charleston, South Carolina, attorney for Butler.

Lindsey continued to openly and hostilely occupy the property and, over the objection of Butler, built a dock in 1977 on the Toogoodoo Creek. When the dock was being built, Butler complained to the U. S. Corps of Engineers. The correspondence referred to in Butler's testimony is of record; the Corps of Engineers ruled against Mr. Butler and permitted

Lindsey to proceed with the erection of the dock. Furthermore, the Corps of Engineers advised Butler to seek relief in the state courts; this he failed to do until the institution of this action.

With reference to the taxes on the property, both Butler and Lindsey testified that they paid the taxes. Butler failed to introduce tax receipts but Lindsey did. And Lindsey introduced the tax map which clearly shows that Butler's property does not extend into the subject property.

With this backdrop, I address the findings of the Master enumerated on page 1 of this dissent; these findings are endorsed by the majority opinion.

The Master first found that both parties had used the subject land for many years and that there was a dispute of ownership by the parties. And this is the thrust of the majority opinion. There is nothing in the record to support this finding. Butler testified that he had lived on Edisto Island for 34 years and had only returned to his farm which supposedly includes the subject property about 3 years before the institution of the action. He testified that he and his sons occasionally hunted on the property. I disagree with the majority's emphasis on the proposition stated in *Mullis v. Winchester*, 237 S. C. 487, 118 S. E. (2d) 61 (1961), that acts of ownership of open land need only be exercised in a way consistent with the use to which the land may be put and which the situation of the property permits without actual residency or occupancy. In my view, the hunting excursions several times a year which Butler maintains are an effective assertion of his ownership are too sporadic to defeat Lindsey's claim of exclusivity, whatever the nature of the property. Hunting and occasional or temporary use or occupation of property neither constitutes nor defeats adverse possession. See the long list of cases cited in West's South Carolina Digest, *Adverse Possession*, Key No. 24 (1952).

Nor does this alleged occasional hunting affect the exclusiveness of Lindsey's hostile possession of the subject property as Butler argues and the majority opinion holds. The record reflects only one instance after the confrontation in early 1974 by which the alleged hunting was brought home to Lindsey and in that instance, as later discussed, Lindsey's sons told Butler's sons that the property belonged

to Lindsey. There is no testimony of record reflecting that Lindsey's occupancy of the subject property under claim of title did not amount to exclusive dominion of the subject property. Butler, by his attorney, Brockinton, threatened to sue Lindsey as a trespasser. Butler failed to carry out the threat to bring a trespass action until more than ten years after it was made by his attorney, Brockinton.

I would next hold that the Master erred and the majority are mistaken by holding that Lindsey's open use of the subject property did not commence until 1977. This ruling was vitiated àt the very beginning of the trial by the quoted testimony of Butler that after the letter from Brockinton, Lindsey stayed on the property and continued using it.

The Master also erred by attaching significance to a confrontation between the sons of the parties which occurred in 1977. Butler's son, John M. Butler, Jr., testified that he and his brother in 1977, "went down in this area (the subject property) with a bushhog." He testified that he was met by Lindsey's children who told him that it was their property. John M. Butler, Jr., testified that the only reason that he went to the subject property was to hunt several times a year. This alleged confrontation in no way interrupted the exclusivity of the adverse possession of Lindsey; to the contrary, Lindsey's children asserted, in effect, that the property belonged to their father, thereby emphasizing that Lindsey's occupancy was hostile.

The question presented by Lindsey's motion for a directed verdict is whether Lindsey occupied the property under claim of title with the necessary elements of adverse possession for ten years prior to the institution of this action.

Section 15-67-220, Code of Laws of South Carolina (1976) is the statute pertaining to adverse possession under claim of title (a deed or court decree); this statute in relative part provides, in effect, that occupancy of a *part* of the land described in the written instrument under which the adverse claimant occupies the land for a 10 year period vests title in the occupant by adverse possession; the occupation has to have as incidents the elements of adverse possession. *Mullis v. Winchester*, 237 S. C. 487, 118 S. E. (2d) 61 (1961); *Haithcock v. Haithcock*, 123 S. C. 61, 115 S. E. 727 (1923). Section 15-67-230, Code of Laws of South Carolina (1976) adds em-

phasis to the rules that when a part of a lot is improved the possession of one claiming adverse possession under claim of title constructively extends to the whole lot. This rule, however, seems to be different when the owner of the record title owns the adjoining property and the adverse claimant acquires color of title to part of the property belonging to the record title holder. In this situation the constructive possession of the record title owner, absent disseisin, prevails over the constructive possession of the adverse claimant, *Middleton v. Dupuis*, 11 S. C. L. (2 Nott & McCord) 310 (1820). In the case at hand, however, Butler was put on notice to inquire of the public records by what tenure Lindsey claimed title and by his own testimony was disseised of the subject property for a period of more than ten years.

Lindsey's testimony was that he placed a mobile home on the property in 1961 and still had a mobile home on the property. A brief reference to the testimony summarized herein reflects that this occupancy by a mobile home together with the other enumerated acts of ownership and occupancy by Lindsey established that adverse possession required when one occupies property under claim of title.

While the record clearly shows that Lindsey's possession was open and notorious, it also shows that in early 1975, Butler and his attorney knew of Lindsey's adverse possession. **Where the owner of land has actual knowledge of adverse possession of his land, it is his duty to consult the public records to ascertain by what tenure the occupant holds;** he is chargeable with notice of the contents of a recorded deed constituting color of title. Also where the description in the deed of the occupant is identical in many respects with the description of the deed under which the owner claims, he has notice that the occupant is claiming his land. **The owner's actual knowledge of adverse possession is equivalent to and dispenses with the necessity of open and notorious possession.** *See* 2 C. J. S. *Adverse Possession* Section 51, p. 718 (1972); 3 Am. Jur. 2d *Adverse Possession* Sections 73 and 74 (1986). **Misapprehension of this rule, I submit, is one of the fatal flaws of the majority opinion.** Butler in early 1975 was put on notice to inquire as to the state of the record. *See Arceneaux v. Arrington*, 284 S. C. 500, 327 S. E. (2d) 357 (Ct. App. 1985). (A party is

deemed to have notice of a deed from the date it is recorded.). Butler's attorney found Lindsey's deed from Riser which clearly shows the subject property as being conveyed to Lindsey and he should have found that the Charleston County tax map reflected the property as belonging to Lindsey and that Lindsey was paying taxes on it. Therefore, Butler had actual as well as constructive notice of Lindsey's claim more than 10 years before he brought this action.

Where a person goes into possession of land under a deed from a third person which purports on its face to convey to him an absolute and exclusive title to the entire interest in the land, and such deed is spread upon the public records, this is notice to the world that he is claiming the entire and exclusive interest in the land, and his possession may be adverse to all the world from the time of its commencement. *Sudduth v. Sumeral*, 61 S. C. 276, 39 S. E. 534 (1901).

And where there has been an entry under color of title and an occupancy of a land for the statutory period, then the presumption created by this section (Section 15-67-220) can only be overcome by showing adverse occupancy and possession for ten years before the action to recover the property was commenced. *Dickson v. Eppes*, 104 S. C. 381, 89 S. E. 354 (1916). *Congdon v. Morgan* 14 S. C. 587 (1880) is a similar case. There the purchasers made entry upon the land under their deed, marked out their claim by survey and stakes, and upon the portion in litigation built a wharf on which to land light wood, etc. and erected a boat shed and used both wharf and shed. The Supreme Court held that these acts of possession under color of title would ripen into title by adverse possession.

I would hold that the uncontradicted testimony of record reflects that Lindsey after actual and constructive notice to Butler of his claim of title (1) occupied the subject property under claim of title as early as 1966 by placing a mobile home on it, clearing land on the point at which he or his children spent weekends, and in 1966 by installing a culvert under the slough indicated on the drawings contained herein to run a road to the point, (2) paid taxes on the disputed land at least from 1974 forward, (3) later built a dock on the northern most portion of the land on Toogoodoo Creek in 1977 to which he ran water and electricity, (4) occupied the

property under claim of title continually, hostilely, openly, notoriously and exclusively for a period in excess of 10 years after having given actual and constructive notice to Butler of the hostility of his occupancy of the land. I would further hold (5) that although Butler complained to the U. S. Coast Guard and the U. S. Corps of Engineers about Lindsey's occupancy of the property during the aforementioned period, he did not institute this action until December 18, 1985.

I would hold that under the undisputed evidence of record, Lindsey acquired title to the subject property by adverse possession under claim of title. The undisputed evidence of record required the Master to grant Lindsey's motion for a directed verdict on the grounds that he had acquired title to the subject property by adverse possession. I would, therefore, reverse the appealed order.